[Civ. No. 28819. First Dist., Div. Two. Dec. 20, 1971.]

CITY OF SANTA CLARA, Plaintiff and Respondent, v.
SANTA CLARA UNIFIED SCHOOL DISTRICT et al.,
Defendants and Appellants.

## COUNSEL

William M. Siegel, County Counsel, and Robert T. Owens, Deputy County Counsel, for Defendants and Appellants.

Edwin J. Moore, City Attorney, and M. Van Smith, Assistant City Attorney, for Plaintiff and Respondent.

**OPINION**

**ROUSE, J.**—This is an appeal by the Santa Clara Unified School District, the individual members of the board of trustees of said district and the superintendent of schools of said district from a judgment enjoining the construction of a continuation high school on certain property located within the City of Santa Clara.

The facts are without conflict and may be summarized as follows: The City of Santa Clara has at all times since July 1960 had a master plan which provides for the location of public schools within its boundaries. Ordinance No. 918, which was enacted by the city in February 1960, provides for the issuance of use permits authorizing the location of public schools within residential zones. The ordinance declares it to be unlawful and a public nuisance to locate a school within a residential zone without having first obtained a use permit.

The Santa Clara Unified School District, which was created in 1966, owns certain real property located within the City of Santa Clara. The property in question had originally been acquired by the Santa Clara Elementary School District in 1952, and the Scott Lane Elementary School had been constructed on a portion of the property in 1953. Ordinance No. 918 had not been enacted at that time, and there was no requirement that a use permit be obtained. The property was zoned for residential use at the time, and it continued to be zoned for residential use following the construction of the elementary school.

In April 1967, the Santa Clara Unified School District decided to construct a continuation high school on the unused portion of the district-owned property on which the Scott Lane Elementary School had been constructed. The district reached this decision after considering and evaluating various alternative sites.

Preliminary plans and specifications were prepared, and they were approved by the State Division of Architecture in April 1968. Construction bids were advertised for, and in September 1968, it was determined that the low bid exceeded the estimated cost of construction. The district rejected this bid due to the lack of adequate funding. The plans and specifications were then reviewed and new bids were called for. The new bids were to be opened on November 19, 1968.

After calling for the new bids, the district filed an application for a use permit with the City of Santa Clara. The district's initial application had no plans attached to it, and it was not accepted for filing. The district then filed a second application, in proper form, and on November 13, 1968,

the city planning commission ruled that it would recommend approval of the use permit subject to certain conditions having to do with landscaping, construction and parking.

On November 19, the city council filed an appeal from the planning commission's decision.

On November 21, the time having arrived for the opening of the construction bids, the governing board of the school district held a special meeting and voted to award the construction contract to the Near Cal Corporation. The board was aware that the district's application for a use permit was to be reviewed by the city council. However, the board members felt that since the recommendation of the planning commission had been favorable, the city council would in all probability grant the use permit. The construction contract was signed on November 25, and construction commenced shortly thereafter.

On December 26, the governing board of the school district held another meeting. Lawrence Curtis, the superintendent of the school district, advised the board that the Near Cal Corporation felt that there was opposition to the construction of the proposed school and feared that litigation might be in the offing. The board was advised by the county counsel that it had the authority, under Government Code, section 53094, to render the city zoning ordinance inapplicable to the proposed school construction. However, the board decided that it wished to continue to cooperate fully with the city.

The district's use permit application had in the meantime been referred to the city's architectural control committee. Following the December 26 meeting, representatives of the school district met with this committee, and it was agreed that subject to certain modifications acceptable to both sides, the district would comply with the conditions imposed by the planning commission.

On December 30, the city council voted to deny the district's application for a use permit.

On January 2, 1969, a meeting of the governing board of the school district was held. The board members were informed of the city council's action. They were also provided by the county counsel with a resolution exercising their rights under Government Code, section 53094. The county counsel advised the board that if it wished to build the continuation high school on the site it had previously selected, he recommended that the board adopt the resolution. The board decided to take no action until it had held an open meeting on January 7, and had heard from those indi-

viduals who were opposed to the construction of the school on the site selected by the district.

At the January 7 meeting, the board explained to those attending the meeting the various factors which had been considered in selecting the site for the continuation high school. After hearing from those in opposition, the board voted to adopt Resolution No. 69-6 rendering the city zoning ordinance inapplicable under Government Code, section 53094. The president of the board testified that after listening to all of the views discussed at the meeting, she still believed that the board had selected the best available site for the continuation high school. Had she felt otherwise, she would have voted against the resolution.

Following the school district's adoption of Resolution No. 69-6, the City of Santa Clara commenced the instant action against the school district, the individual members of its governing board, the district's superintendent of schools and Near Cal Corporation. The city sought injunctive relief and judicial review of the school district's action, and it alleged that the proposed school construction was in violation of the city's zoning ordinance; that Government Code, section 53094, was unconstitutional; and that the school district had acted arbitrarily and capriciously in adopting Resolution No. 69-6.

The trial court held that Government Code, section 53094, was constitutional, but that the school district had acted arbitrarily and capriciously in adopting Resolution No. 69-6. Judgment was entered declaring Resolution No. 69-6 to be null and void and permanently enjoining construction of the continuation high school on the site selected by the school district unless and until there was full compliance with the city's zoning ordinance. The instant appeal followed.

The issues raised on this appeal turn upon the proper interpretation to be accorded to sections 53090 through 53095 of the Government Code. Prior to the enactment of these sections in 1959, our Supreme Court had held that public schools were a matter of statewide concern and that school districts, being local agencies of the state, were not subject to municipal construction regulations when engaged in such sovereign activities as the construction of school buildings. (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177 [302 P.2d 574].) It was subsequently held that school districts were likewise exempt from municipal zoning ordinances and that the state had occupied the field of school site selection by general laws contained in the Education and Government Codes. (*Town of Atherton* v. *Superior Court* (1958) 159 Cal.App.2d 417 [324 P.2d 328].) The court in the *Atherton* case stated: "If, as the *Hall* case holds, the construction and maintenance of a school building is a sovereign activity of the state, it is obvious that

the location and acquisition of a school site is necessarily and equally such an activity. Obviously, too, neither the Constitution nor the Legislature has consented to a municipal regulation of school sites. As said in *Kentucky Institution for Education of Blind* v. *City of Louisville,* 123 Ky. 767 [97 S.W. 402, 8 L.R.A.N.S. 553], as quoted in the Hall case (p. 183): ' " 'The principle is that the state when creating municipal governments does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control. . . . How can the city ever have a superior authority to the state over the latter's own property, or in its control or management? From the nature of things it cannot have.' " ' " (P. 428.)

In 1959, the Legislature responded to these decisions by enacting Government Code, sections 53090 through 53095.

Section 53090 provides in pertinent part that "[l]ocal agency" means any agency of the state for the local performance of governmental or proprietary function within limited boundaries; that it does not include the state, a city or a county.

Section 53091 provides in part that "Each local agency shall comply with all applicable building ordinances and zoning ordinances of the county or city in which the territory of the local agency is situated. . . . Notwithstanding the preceding provisions of this section, this section does not require a school district to comply with the zoning ordinances of a county or city unless such zoning ordinance makes provision for the location of public schools and unless the city or county planning commission has adopted a master plan."

Section 53093 provides that a local agency aggrieved by the application of any zoning ordinance of a county or city or by the decision of an officer, department, board or bureau of the county or city made in connection with such ordinance may appeal to the local planning advisory committee and may thereafter obtain a review of the committee's decision in a court of competent jurisdiction. The section further provides that in lieu of an appeal to the local planning advisory committee, the aggrieved local agency may commence a superior court action seeking review of the act or determination of the county or city.[1]

Section 53094 provides that "Notwithstanding any other provisions of this article, the governing board of a school district, by vote of two-thirds of its members, may render a city or county zoning ordinance inapplicable to a proposed use of property by such school district. . . . If such govern-

---

[1]This section was repealed by the Legislature in 1970 (Stats. 1970, ch. 172, § 23).

ing board has taken such action the city or county may commence an action in the superior court . . . seeking a review of such action of the governing board of the school district to determine whether it was arbitrary and capricious. . . . If the court determines that such action was arbitrary and capricious, it shall declare it to be of no force and effect, and the zoning ordinance in question shall be applicable to the use of the property by such school district."[2]

When these sections are read as a whole, it is apparent that all local agencies are required to comply with city or county zoning ordinances (Gov. Code, § 53091), but that school districts are specifically authorized to exempt themselves from the purview of such ordinances by a two-thirds vote of their governing boards (Gov. Code, § 53094). The only reasonable interpretation of these sections is that a school district must abide by local zoning ordinances unless it chooses to exercise its right of exemption. The decision to render itself exempt is apparently one which the district may make at any time. Section 53094 contains no time limitation of any kind. Neither does that section limit a school district's discretion in any way except to provide that if the district's determination to exempt itself is arbitrary and capricious, it is subject to attack in the superior court.[3]

It is apparent that a school district desiring to construct a new classroom facility within the limits of a particular city which has a master plan and a zoning ordinance providing for the location of public schools is faced from the very outset with several alternative courses of action. The school district might decide to exempt itself immediately and to make no attempt whatever to comply with local zoning ordinances. A second alternative is that the school district could elect total compliance with all zoning re-

---

[2] No attempt has been made to summarize in detail the provisions of sections 53092 or 53095, since they do not bear directly upon the issues raised on this appeal. Section 53092 authorizes the delegation of certain powers of the State Division of Architecture to the county or city. Section 53095 provides that sections 53090 through 53095 shall prevail over certain specified sections of the Education and Government Codes.

[3] This construction of Government Code, sections 53090 through 53095, is entirely consistent with the Assembly Committee Report preceding their enactment. Thus, it appears that the Legislature deliberately accorded different treatment to school districts than to other local agencies because it was well aware that school construction was subject to almost complete control by the state. Sections 53090 through 53095 were primarily designed to insure that *other* local agencies which were not subject to such thorough control by the state could not claim exemption from city and county zoning requirements by virtue of the language contained in *Hall* v. *City of Taft, supra.* The Legislature accordingly provided in section 53094 that school districts, as opposed to other local agencies, should retain the right to exempt themselves from local zoning ordinances. (See Problems of Local Government Resulting from the *Hall* v. *City of Taft* Case Decision, 6 Assem. Interim Com. Report No. 8, Municipal and County Government (1959) p. 7, 1 Assem. J. Appendix (1959).)

quirements, and, if it were denied the right to build on a particular site or were subjected to other requirements which it considered unreasonable, the district could avail itself of its right of appeal to the local planning advisory committee or could seek relief in the superior court. A third possibility is that the school district might choose to comply with all city zoning requirements which were acceptable to it and might reserve its right to exempt itself when it was directed to comply with a condition which it deemed unreasonable.

■ In the instant case, the only reasonable inference which can be drawn from the evidence is that defendant school district elected to cooperate with the city and to comply with all zoning requirements which it deemed reasonable. Representatives of the district met with the city's architectural control committee and reached an amicable compromise with regard to the conditions imposed by the planning commission. When the city council then denied the use permit and thereby flatly prohibited construction on the desired site, the district exempted itself from the city's zoning ordinance under Government Code, section 53094. It unquestionably possessed this right unless its decision can be deemed arbitrary and capricious.

In the instant case, the district's decision to exempt itself from the city zoning ordinance was made at a time when the city council had flatly prohibited construction of a continuation high school on the site previously selected by the school district. The situation was not one where the district was merely faced with a decision as to whether it was willing to comply with certain conditions imposed by the city. In fact, the district's decision whether to exempt itself from the zoning ordinance turned upon one question—whether the district had selected an appropriate site for the continuation high school.

In his announcement of intended decision, the learned trial judge concludes that "the situation which has created the present dilemma arises from the fact that *a contract to construct the school was let and actual construction commenced prior to either the obtaining of a use permit or the determination not to be bound by the local ordinance.*" (Italics in original.)

It appears to this court that such conclusion is an oversimplification of the entire problem and does disservice to the overall efforts of the school district. The evidence shows that the school district originally selected the site for the continuation high school only after it had evaluated several alternative sites. Its decision was a reasoned and considered one, and it selected the Scott Lane Elementary School site only after it had evaluated

the location of the property, the traffic conditions around the property, the proximity to an elementary school, available financing, recreational facilities and planning considerations.

The evidence bearing upon the city council's reasons for denying the district's application for a use permit suggests a far different approach to the problem. The minutes of the meeting of December 30 when the council voted to deny the use permit, show that Mayor pro tem. Kiely relinquished the gavel in order to second the motion to deny the use permit. He then addressed the council, stating that he had previously taught in a continuation high school and knew that the students consisted of "dope peddlers, molesters, screwballs, thieves, knifers, et cetera." He believed that individuals of this type were a potential threat to the neighborhood and should not "be taken care of at the expense of other kids." He urged that the council not only overrule the planning commission and deny the use permit but that it take whatever legal action was necesary to prevent the continuation high school from being constructed at the site selected by the district.

There is no evidence that the city council gave any consideration to alternative sites or that its opposition to the district's choice of site was based upon anything other than a blanket disapproval of the concept of a continuation high school.

Following the denial of the use permit, the governing board of the school district met on January 2 and again on January 7. There is no evidence remotely suggesting that the district acted in a precipitous manner. The January 7 meeting was held for the specific purpose of hearing from those opposed to the construction of the continuation high school on the site chosen by the district. In addition to listening to their views, the district's governing board also took the opportunity to explain the various factors which had led to the selection of the Scott Lane Elementary School site. When the governing board then voted to render the city's zoning ordinance inapplicable, it obviously did so because it still believed that the Scott Lane Elementary School property was the best available site for the continuation high school. The president of the board so testified, and the record contains no evidence to the contrary.

It is obvious that the evidence above summarized furnishes no support for a finding that the adoption of Resolution No. 69-6 was either arbitrary or capricious.

Plaintiff city asserts that if it did fail to produce evidence of arbitrary and capricious conduct on the part of the school district, such failure was the fault of counsel for the school district. The city asserts, more specifically, that when its counsel sought to question the superintendent of the

school district concerning the factors considered in selecting the site for the continuation high school, counsel for the school district objected and asserted that the only issue before the court was the propriety of the district's conduct in adopting Resolution No. 69-6. The city contends that under such circumstances, the school district is bound by the doctrine of invited error and cannot object to the sufficiency of the evidence to support a finding of arbitrary and capricious conduct because such lack was the result of the improper exclusion of evidence at the district's instance. (*Watenpaugh* v. *State Teachers' Retirement* (1959) 51 Cal.2d 675, 680 [336 P.2d 165]; *Gray* v. *Southern Pacific Co.* (1944) 23 Cal.2d 632, 644 [145 P.2d 561].)

The record does show that counsel for the school district objected when the city's counsel sought to ask the superintendent of the district whether the board had taken ethnic factors into consideration when selecting the site for the continuation high school. However, the record also shows that the trial court overruled the objection when the city's counsel argued that the board's ultimate act of passing Resolution No. 69-6 would itself be arbitrary and capricious if the school site had been originally selected in an arbitrary and capricious manner. At subsequent stages in the trial, it is rather unclear which counsel took what position. Counsel for the city objected on three occasions when the school district's counsel inquired into the school site selection, but the court overruled the objections and stated that a substantial number of factors had to be considered in evaluating the district's decision to adopt Resolution No. 69-6. Both counsel ultimately asked a number of questions pertaining to the school site selection.

The record does reflect some confusion as to the relevance of evidence bearing upon the district's reasons for selecting the site for the continuation high school. However, it cannot be said that counsel for the school district prevented the city's counsel from inquiring into the subject. Both counsel were permitted to ask questions as to the various factors considered by the school district in choosing the site, and none of the evidence elicited was in the least suggestive of arbitrary or capricious conduct on the part of the school district.[4]

---

[4]For purposes of retrial, it may be pointed out that the evidence in question was clearly relevant to the issues before the court. Although it is true that the city brought this action for the sole purpose of invalidating Resolution No. 69-6, it is apparent that the school district's conduct in adopting this resolution could not be evaluated without taking prior events into consideration. The district adopted the resolution because it believed that it had selected the best available site for the continuation high school and should proceed with construction despite the city's opposition. Although the selection of a school site by a school district involves an exercise of legislative and discretionary action and may not be challenged as to its wisdom,

Another point urged by respondent City of Santa Clara appears worthy of comment. In referring to the provisions of section 53093 of the Government Code (since repealed by the Legislature), respondent suggests that appellant school district did not avail itself of the right of review provided for therein. While it is clear that school districts clearly qualified as "a local agency aggrieved" within the provisions of that section, yet it is significant to note that the method prescribed by section 53094 (and the one resorted to by appellant herein) is available *only* to school districts. Thus it seems reasonable to conclude that the Legislature, consistent with the philosophy set forth in *Hall* v. *City of Taft, supra,* 47 Cal.2d 177, and *Town of Atherton* v. *Superior Court, supra,* 159 Cal.App.2d 417, contemplated that school districts might prefer to deal with the problem under the authority of this section, rather than section 53093.

One further point requires discussion for purposes of retrial. In addition to contending, quite correctly, that there was no evidentiary support for the finding that the adoption of Resolution No. 69-6 was arbitrary and capricious, defendant school district has also argued that the adoption of the resolution was an entirely unnecessary act on its part because it was never subject to the city's zoning ordinance to begin with. The school district bases this argument upon the language of Government Code, section 53091, to the effect that school districts need not comply with a city or county zoning ordinance unless it "makes provision for the location of public schools . . . ." The district contends that the city's zoning ordinance does not provide for the location of public schools because it imposes the requirement that a use permit must first be obtained and does not designate any particular zone in which public schools may be constructed without a use permit. The school district also argues that the city has discriminated against public schools in favor of private schools because the zoning ordinance does provide that private schools may be constructed in R-4 zones without a use permit.

The district's position is not meritorious. The question before us is not whether public or private schools are accorded identical treatment under the city's zoning ordinance but whether the ordinance provides for the location of public schools. The city correctly points out that public schools may

---

expediency or reasonableness, a school district must refrain from making such selection in an arbitrary and capricious manner. (*Arthur* v. *Oceanside-Carlsbad Junior College Dist.* (1963) 216 Cal.App.2d 656, 658 [31 Cal.Rptr. 177].) It is obvious that evidence showing that the school district acted arbitrarily and capriciously when it originally selected the site for the continuation high school would be highly relevant to the question of whether it likewise acted arbitrarily and capriciously when it made the determination to adhere to such selection and to exempt itself from local zoning requirements.

be constructed in R-1 zones as well as in less restrictive zones whereas private schools may not. It is thus arguable that public schools are accorded more favorable treatment than private schools. Clearly, the ordinance does provide for the location of public schools, and the requirement that a use permit be obtained does not, as contended by the school district, give the city unlimited discretion to exclude public schools. The city's zoning ordinance contains a general welfare standard which furnishes the criteria for determining whether to issue a use permit. Such an ordinance meets the requirements of due process and does not authorize the unbridled or arbitrary denial of a use permit. (*Stoddard* v. *Edelman* (1970) 4 Cal.App.3d 544, 548-549 [84 Cal.Rptr. 443]; *Tustin Heights Assn.* v. *Bd. of Supervisors* (1959) 170 Cal.App.2d 619, 635 [339 P.2d 914].)

Since the record contains no evidence, as noted above, for the finding that the defendant school district acted arbitrarily and capriciously when it adopted Resolution No. 69-6, the judgment is reversed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied January 19, 1972, and respondent's petition for a hearing by the Supreme Court was denied February 16, 1972.