OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | |
|---|---|
| OPINION<br><br>of<br><br>DANIEL E. LUNGREN<br>Attorney General<br><br>RONALD M. WEISKOPF<br>Deputy Attorney General | No. 90-504<br><br>JANUARY 31, 1991 |

THE STATE ALLOCATION BOARD has requested an opinion on the following question:

Do the requirements for utilization of minority and women's business enterprises in work performed under construction contracts awarded by state agencies apply to contracts for the construction of school facilities under the Leroy F. Greene State School Building Lease-Purchase Law?

CONCLUSION

The requirements for utilization of minority and women's business enterprises in work performed under construction contracts awarded by state agencies do not apply to contracts for the construction of school facilities under the Leroy F. Green State School Building Lease-Purchase Law.

ANALYSIS

Under the State Contract Act (Pub. Contract Code, §§ 10100-19100),[1] contracts let by state agencies for the construction of state structures, buildings, or other improvements, exceeding a certain cost, are generally awarded following competitive bidding to the "lowest responsible bidder." (§§ 10105, 10122, 10140, 10160-10168, 10180.) Sections 10115-10115.10 require state agencies, in awarding a contract to the lowest responsible bidder, to consider the efforts of bidders to meet certain stated percentage goals for participation by minority business enterprises and women business enterprises in state contracted work, and to award the contract to the lowest responsible bidder meeting those goals or making good faith efforts to do so. We are asked whether these requirements apply to contracts for the construction of school facilities under the Leroy F.

---

[1] Unidentified section references will be to sections of the Public Contract Code unless the context indicates otherwise.

Greene State School Building Lease-Purchase Law of 1976. (Ed. Code, §§ 17700-17758; hereafter "Lease-Purchase Law.") We conclude that they do not.

Section 10115 provides in part as follows:

"Notwithstanding any other provision of law, all contracts awarded by any state agency, department, officer, or other state governmental entity for construction ... shall have statewide participation goals of not less than 15 percent for minority business enterprises and not less than 5 percent for women business enterprises. These goals apply to the overall dollar amount expended each year by the awarding department, as defined by section 10115.1, pursuant to this article."

By its express terms, section 10115 only applies to "contracts awarded by any state agency, department, officer or other state governmental entity...." Indeed, the Legislative Counsel's Digest concerning the legislation that enacted sections 10115-10115.10 indicates that the requirements only apply to <u>state</u> government contracts,[2] and this is consistent with placement of sections 10115-10115.10 in the State Contract Act governing the construction of "state structure[s], building[s], road[s], or other state improvement[s]...." (§ 10105, subd. (a) [definition of "project" for purposes of the State Contract Act]; cf. § 10122.) In contrast, contracting by local agencies is governed by the Local Agency Public Construction Act (§§ 20100-20918).

Hence resolution of our question turns on whether the Legislature intended that contracts for the construction of school facilities under the Lease-Purchase Law are to be considered contracts awarded by a "state" agency for the purposes of sections 10115-10115.10. (Cf. *Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570; *Great Lake Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 153; *Select Base Materials* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645.)

Under the Lease-Purchase Law, contracts for the construction of school facilities are "authorized" and "approved" by the State Allocation Board and "approved" by the Department of Education and Department of General Services, but it is the local school district that lets the contract. (See Ed. Code, §§ 17719.3, 17724, 17725, 17729.) Education Code section 17729 states:

"The [State Allocation Board] shall authorize the applicant school district to act . . . in the performance of . . . the selection of school sites, the securing of appraisals, the contracting for architectural services, the advertisement for construction bids and the entering into of contracts therefor and the purchase of furniture and equipment."

---

[2]The Legislative Counsel's Digest to Assembly Bill No. 1933, 1987-1988 Regular Session, is a valuable aid in determining the Legislature's reasons enacting sections 10115-10115.10. (See *People* v. *Ashton* (1985) 39 Cal.3d 481, 492; *Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 387.) The Digest states:

"Existing provisions of law that govern contracting <u>by state agencies</u> do not impose goals for the participation in those contracts by minority and women business enterprises.... This bill would ... require that all contracts <u>awarded by state governmental entities</u> for construction ... have statewide participation goals ... for minority business enterprises and ... women business enterprises...." (Emphases added.)

When a school district enters into a Lease-Purchase construction contract pursuant to the terms of Education Code section 17729, does it do so as a "state agency" for purposes of the State Contract Act?

In some contexts, the question of whether school districts are considered agencies of the state "has been flatly answered in the affirmative...." (*Town of Atherton* v. *Superior Court* (1958) 159 Cal.App.2d 417, 421, citing *Hall* v. *City of Taft* (1956) 47 Cal.3d 177, 181 ["School districts are local agencies of the state for the operation of the state school system"].) But the construction of school facilities is somewhat *sui generis*, and the Legislature has considered school districts as local agencies when they undertake that task. (See e.g., *City of Santa Clara* v. *Santa Clara Unified Sch. Dist.* (1971) 22 Cal.App.3d 152, 158; 71 Ops.Cal.Atty.Gen. 332, 336 (1988).) Specifically, it has directed that the letting of contracts by school districts be governed by sections 20100-22109 (§ 20110 ["The provisions of this part shall apply to contracts awarded by school districts ...."]), with the particular provisions dealing with those contracts contained in the aforementioned Local Agency Public Construction Act. When school districts construct projects, they do so pursuant to the latter statutory scheme.

Any doubt that the Legislature considers the letting of contracts for the construction of school facilities by school districts to be an activity of a local agency is dispelled by looking at amendments the Legislature made to sections 2000 and 20111 in 1988. The same Legislature which added sections 10115-10115.10 that year to address participation by minority business enterprises and women business enterprises in public contract work awarded by <u>state</u> agencies, also amended sections 2000 and 20111 to particularly specify that the term "local agency" included school districts when awarding construction contracts. (Stats. 1988, ch. 538, §§ 1-2.)

The Legislature has thus directed that the awarding of contracts by school districts be governed by the provisions of law which govern contracting by local agencies. Section 10115 only deals with the awarding of contracts by state agencies, and so we would conclude that the awarding of contracts by school districts for the construction of school facilities is not governed by its strictures.

But there is a hurdle to surmount before doing so. Under the Lease-Purchase Law, the construction of school facilities has aspects of both state and local character. Basically it provides for (1) direct financing of school construction with state money, (2) the construction proceeding under contracts let by a local school district acting as the agent for the state, and (3) title to the facility resting in the state for a period of forty years, during which time it is leased to the local school district. (See 71 Ops.Cal.Atty.Gen. 332, 335, 338, *supra*; 68 Ops.Cal.Atty.Gen. 329 (1985).) More particularly, as we summarized in a recent opinion discussing Lease-Purchase Law financing:

"`Each school district which desires to lease a [facility from the state] for a grade level maintained by it ... submit[s] ... an application therefor [to the State Allocation Board].' (Ed. Code, § 11717; cf. § 11720.) On receiving an application to enter into such a leasing arrangement, the State Allocation Board is authorized to undertake construction of the facility for the applicant district (§§ 17702(d), 17710, 17712) with funds from the State School Building Lease-Purchase Fund (§ 17708; cf., § 17711). `The Board may construct any project, and may acquire all property necessary therefor, on such terms and conditions as it may deem advisable' (§ 17710) and it `has full charge of the acquisition, construction, completion, and control of all projects authorized by them.' (§ 17712.)

"Upon completion of a project, the Board leases it to the district for a period of up to forty years (§§ 17705(e), 17730.2). During the term of the lease, title to all

property acquired, constructed, or improved by the board remains with the state (§§ 17713, 17730) after which it `reverts' to the particular school district for which the project was undertaken (§ 17730.2)." (71 Ops.Cal.Atty.Gen. 331, 335, *supra*.)

In 58 Ops.Cal.Atty.Gen. 1 (1975) we concluded in a somewhat similar situation that the State Contract Act would apply to the construction of an office building where state monies would be used to defray its costs and "[t]he structure when completed [would] be owned by the State." (58 Ops.Cal.Atty.Gen. at 11.)

Here it is suggested that like factors in the specifics of Lease-Purchase Law construction compel a conclusion that projects financed thereunder are projects of the state rather than those of the governing boards of local school districts and the requirements of sections 10115-10115.10 therefore would apply to them.[3] But we do not believe that to be the case.

In the aforementioned 71 Ops.Cal.Atty.Gen. 332, *supra*, the dual nature of a Lease-Purchase Law school facility construction project presented a similar problem: was the construction of school buildings when so financed exempt from the provisions of section 53097 of the Government Code, which requires the governing board of a school district to comply with certain types of local ordinances regulating grading, drainage, and road improvements. Because of the unusual state involvement in Lease-Purchase Law construction, it was argued that the requirements of the section were inapplicable. We concluded, however, that the particular nature of the state's involvement did not make the construction a state project so as to exempt it from the strictures of Government Code section 53097. We said:

> "Under the Lease-Purchase Law, the State Allocation Board does not generate its own business; it responds instead to the needs, and acts at the behest of local school districts as expressed in applications submitted through their governing boards for the lease of a particular facility. [Citations.] As with the construction of school facilities generally, when they are constructed under the ... Lease-Purchase Law, it is the local district through its governing board which decides upon a facility,

---

[3]It is also urged that school districts undertaking Lease-Purchase Law construction are "awarding departments" which, "in awarding contracts to the lowest responsible bidder, [must] consider the efforts of a bidder to meet [the] minority business enterprise and women business enterprise goals set forth in [§§ 10115-10115.10]." (§ 10115.2.) This is because the term "awarding department" is so defined to include "any ... entity empowered by law to enter into contracts on behalf of the State of California" (§ 10115, subd. (a)), and although a school district is the entity which selects the site, secures appraisals, advertises for construction bids, and enters into contracts for the construction, it does so only as the "agent" of the State Allocation Board in the performance of acts specifically approved by it. (Ed Code, § 17729.)

We reject the suggestion. Although a school district awards a contract only as the agent of and by authority of the State Allocation Board (Ed. Code, § 17729), that does not make it an "awarding department" for the purposes of sections 10115-10115.10. When an "awarding department" is spoken of in sections 10115-10115.10, an agency or entity with statewide activity is contemplated. This is seen in section 10115 itself: the minority business enterprise and women business enterprise participation goals which the agency's contracts must contain are *statewide* participation goals. In any event, we have shown that it is not the "awarding department" which is the key to answering our question, but whether the contract involved is one which is "awarded by [a] state agency ... for construction." (§ 10115.)

chooses its site, secures appraisals, and enters into contracts for its construction. (Compare §§ 17717, 17720 and 17729 with Ed. Code, §§ 35270, 39170, 81060.) ....

"Under the Lease-Purchase Law then, the governing board of a school district is the instigator of a project that will be constructed. It makes the decision regarding the facility to be built and it lets the contracts for the construction, albeit as an `agent' of the state. While actual title to a facility temporarily rests in the state for the term of a lease..., the reason for that is so the lease-purchase method of financing can be used. The state cannot lease a facility to a school district under the mechanism of the Law ... if it does not own the property. And from that we see why the district is designated as the state's `agent' in constructing a project; it is so designated because it is dealing with property title to which is temporarily in the state.

"Except for these features of title and agency, which are inherent in a lease-purchase arrangement to make its financing possible, Lease-Purchase Law projects are much like district financed construction, and in both cases the governing boards of the respective school districts take all of the actions necessary for the construction of their facilities. The reality then of the construction of school facilities under the Leroy F. Greene State School Building Lease-Purchase Law, is one of school districts building needed facilities but using state funds and availing themselves of the lease-purchase mechanism to do so." (*Id.* at 339-341; fns. omitted.)

We reaffirm and apply our prior conclusion that the financing of school construction under the Lease-Purchase Law mechanism does not change what would otherwise be considered a local activity into a state undertaking. The State Contract Act does not govern here.[4]

We therefore conclude that the requirements for utilization of minority and women's business enterprises in work performed under construction contracts awarded by state agencies do not apply to contracts for the construction of school facilities under the Lease-Purchase Law.[5]

\* \* \* \* \*

---

[4]This conclusion does not imply that no minority and women's business enterprise requirements apply with respect to t such contracts. Rather, the requirements are those of sections 2000 and 20111 which are applicable to local agencies.

[5]Since we conclude that the requirements of sections 10115-10115.10 are inapplicable here, we need not address the issue of whether these requirements are constitutional. The issue of their constitutionality is presently in litigation.