TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-902 |
| of | : | |
| | : | January 27, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE DON ROGERS, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1. Is a California water district generally required to comply with the building and zoning ordinances of the county or city in which it is located?

2. Is a California water district exempt from any building or zoning ordinances of the county or city in which it is located?

3. Is a California water district exempt from enforcement actions undertaken by a county with respect to the California Safe Drinking Water Act?

CONCLUSIONS

1. A California water district is generally required to comply with the building and zoning ordinances of the county or city in which it is located.

2. A California water district is exempt from compliance with those building and zoning ordinances of the county or city in which it is located which regulate the location or construction of facilities directly and immediately used for the production,

1.                                                                94-902

generation, storage, or transmission of water, and is conditionally exempt from county or city zoning ordinances with respect to facilities related and integral to the proper operation of particular water storage or transmission functions of the district.

      3.     A California water district is not exempt from enforcement actions undertaken by a county with respect to the California Safe Drinking Water Act.

ANALYSIS

The principal statutory provisions governing whether a local public agency must comply with the building and zoning ordinances of the county or city in which it is located are contained in Government Code sections 53091 and 53096.[1] Section 53091 provides in relevant part as follows:

> "Each local agency shall comply with all applicable building ordinances and zoning ordinances of the county or city in which the territory of the local agency is situated. . . .

> ". . . Building ordinances of a county or city shall not apply to the location or construction of facilities for the production, generation, storage, or transmission of water . . . by a local agency.

> "Zoning ordinances of a county or city shall not apply to the location or construction of facilities for the production, generation, storage, or transmission of water . . . ."

Section 53096, subdivision (a), provides in part:

> "Notwithstanding any other provisions of this article, the governing board of a local agency, by vote of four-fifths of its members, may render a city or county zoning ordinance inapplicable to a proposed use of property if the local agency at a noticed public hearing determines by resolution that there is no feasible alternative to its proposal, except when the proposed use of the property by such local agency is for facilities not related to storage or transmission of water . . . including, but not limited to, warehouses, administrative buildings or automotive storage and repair buildings. . . ."

---

[1]Prior to footnote 2, undesignated section references herein are to the Government Code.

1. California Water Districts

The first inquiry is whether a California water district is a "local agency" within the meaning of sections 53091 and 53096 set forth above. If so, it would generally be subject to the building and zoning ordinances of the county or city in which it is located as provided by the two statutes.

The term "local agency" is defined in section 53090, subdivision (a), as follows:

"`Local agency' means an agency of the state for the local performance of governmental or proprietary function within limited boundaries. `Local agency' does not include the state, a city, a county, a rapid transit district whose board of directors is appointed by public bodies or officers or elected from election districts within the area comprising the district, or a district organized pursuant to Part 3 (commencing with Section 27000) of Division 16 of the Streets and Highways Code."

If a California water district is included within term "the state," then it would not be a "local agency" within the purview of sections 53091 and 53096, and traditional principles governing the local regulation of state activities would apply. (See, e.g., *Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 183 ["When . . . [the state] engages in such sovereign activities as . . . construction and maintenance . . . it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation"]; see also *Town of Atherton* v. *Superior Court* (1958) 159 Cal.App.2d 417.) If, on the contrary, a California water district is a "local agency," then the provisions and exemptions expressly provided in sections 53091 and 53096 would be applicable according to their terms.

Section 53090 excludes "the state" and, by implication, statewide administrative agencies of the state. In *Regents of University of California* v. *City of Santa Monica* (1978) 77 Cal.App.3d 130, it was held that the University of California was exempt from local regulation as a "statewide administrative agency." (*Id*., at pp. 135, 137.) On the other hand, school districts, which have been described as "agencies of the state for the local operation of the state school system" (*Hall* v. *City of Taft, supra,* 47 Cal.2d at 181; *Town of Atherton* v. *Superior Court, supra*, 159 Cal.App.2d at 421), and thus exempt under traditional principles of law from local regulation, are now subject to the statutory scheme in question relating to "local agencies." (§§ 53090-53095; *City of Santa Cruz* v. *Santa Cruz City School Board of Education* (1989) 210 Cal.App.3d 1, 6-7; *City of Santa Clara* v. *Santa Clara Unified School District* (1971) 22 Cal.App.3d 152, 156-158.)

Hence, the phrase "an agency of the state for . . . local [purposes]" includes both local public agencies (*City of Lafayette* v. *East Bay Municipal Utilities District* (1993) 16 Cal.App.4th 1005, 1013 [municipal utility district]; *Kehoe* v. *City of Berkeley* (1977) 67

Cal.App.3d 666, 673 [redevelopment agency]; 55 Ops.Cal.Atty.Gen. 375 (1992) [local hospital district]) and state agencies of limited territorial jurisdiction (*City of Santa Cruz* v. *Santa Cruz City School Board of Education, supra*, 210 Cal.App.3d 1 [school district]; *City of Santa Clara* v. *Santa Clara Unified School District, supra*, 22 Cal.App.3d 152 [school district]).

A California water district performs its functions within a limited "area of land which is capable of using water beneficially for irrigation, domestic, industrial or municipal purposes and which can be serviced from common sources of supply and by the same system of works." (Wat. Code, § 34153.) The board of supervisors of the county in which the greatest portion of the area of the land is situated at the time of the filing of the petition for formation of the district determines the boundaries of the proposed district. (Wat. Code, §§ 34015, 34154, 34303-34305.) A district is formed and officers elected pursuant to an election held within the proposed district. (Wat. Code, §§ 34400, 34423.) Assessments to pay the costs of water systems not defrayed by water sales are levied against the land within the district. (Wat. Code, §§ 36570-36574; 64 Ops.Cal.Atty.Gen. 790, 791 (1981).)

Hence, a California water district is not a statewide administrative agency. Whether it may be properly characterized as an agency of the state for the local operation of a state activity or system, as in the case of a school district, is immaterial for purposes of this inquiry. In any case, it is clearly "an agency of the state for the local performance of governmental or proprietary function within limited boundaries." (§ 53090, subd. (a).)

In answer to the first question, therefore, it is concluded that under the terms of section 53091, a California water district is generally required to comply with the building and zoning ordinances of the county or city in which it is located.

2.     Specific Exemptions

The second inquiry is whether a California water district, as a local agency, is exempt from any county or city building or zoning ordinances. While both sections 53091 and 53096 contain specific exemptions to the application of such ordinances, to what extent do the exemptions apply to the activities of a California water district?

By way of introduction, the court in *City of Lafayette* v. *East Bay Municipal Utilities District*, *supra*, 16 Cal.App.4th at 1013-1014, summarized this area of the law as follows:

"Section 53091 generally requires local agencies . . . to comply with the building and zoning ordinances of cities and counties in which they are situated. (*Lawler* v. *City of Redding* (1992) 7 Cal.App.4th 778, 783; *Regents of University of California* v. *City of Santa Monica* (1978) 77 Cal.App.3d 130, 137; *City of Santa Clara* v. *Santa Clara Unified School Dist.* (1971) 22 Cal.App.3d 152,

158.)   Section 53091 is part of a statutory scheme -- `Regulation of Local Agencies by Counties and Cities,' sections 53090 through 53095 (Stats. 1959, ch. 2110, § 1, pp. 4907-4909) -- enacted in response to opinions which broadly immunized all state agencies from local regulatory control.  (*City of Santa Cruz* v. *Santa Cruz City School Bd. of Education* (1989) 210 Cal.App.3d 1, 5; *City of Santa Clara* v. *Santa Clara Unified Sch. Dist., supra*, 22 Cal.App.3d at p. 157; *Baldwin Park County Water Dist.* v. *County of Los Angeles* (1962) 208 Cal.App.2d 87, 95-96; 40 Ops.Cal.Atty.Gen. 243, 246 (1962).   Section 53091 evinces a legislative intent to invest in cities and counties control over zoning and building restrictions, thereby strengthening local planning authority. (*Lawler* v.  *City of Redding, supra*, at p. 783; *Modesto Irr. Dist.* v. *City of Modesto* (1962) 210 Cal.App.2d 652, 656; 37 Ops.Cal.Atty.Gen. 89, 91 (1961).)

"Superimposed upon the legislative grant of authority to cities and counties to impose zoning and building regulations upon local water districts are two enumerated exceptions:   the first, an absolute exemption under section 53091 for `facilities for the production, generation, storage, or transmission of water'; the second, a carefully conditioned, qualified exemption (§ 53096), which the local agency must properly exercise, for facilities `related to storage or transmission of water.'  Unless exempted, water districts must abide by local planning decision of cites and counties. (*City of Santa Clara*  v.  *Santa Clara Unified Sch. Dist., supra,*   22 Cal.App.3d at p. 158.)   When read as a statutory scheme the obvious intent of the Legislature was to strike a balance between the value of local zoning control by cities an counties and the state interest in efficient storage and transmission of water. (Cf.   *People ex el. Cooper* v. *Rancho Santiago College* (1990) 226 Cal.App.3d 1281, 1286; *City of Santa Cruz, supra,*   210 Cal.App.3d at p. 8.)"   (Fns., omitted.)

The exemptions provided in sections 53091 and 53096 are expressed in limited terms.   In this regard, it is to be noted that exceptions to the general provisions of a statute are to be narrowly construed; only those circumstances which are within the words and reason of the exception may be included.  (*City of Lafayette* v. *East Bay Municipal Utilities District, supra*, 16 Cal.App.4th at 1017; 70 Ops.Cal.Atty.Gen. 244, 246 (1987).)

Specifically, the exemption provided in section 53091 applies "to the location or construction of facilities for the production, generation, storage, or transmission of water . . . ." Concerning this exemption the court in *City of Lafayette* v. *East Bay Mun. Util. Dist., supra*, 16 Cal.App.4th 1005, observed:

". . . We conclude that the District's EASC project, while it may be a `facility,' still does not fall within the absolute exemption of section 53091.  A `facility' has been defined as `"something that promotes the ease of any action,

operation, transaction, or course of conduct[;] . . . something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end.'" (*City of Santa Cruz*, *supra*, 210 Cal.App.3d at p. 4, quoting from Webster's Third New Internat. Dict. (1981) pp. 812-813.) The EASC project is a facility for the storage of materials and equipment necessary for maintenance and repair of aqueducts, pipelines, fitter plants and reservoirs. Thus, it serves as a support facility; it does not actually perform the function of generating, transmitting or storing water. We think that the absolute exemption of section 53091 was intended to be limited to facilities *directly and immediately* used to produce, generate, store or transmit water. Only those indispensable facilities must be geographically located at the unfettered discretion of a water district -- that is, without the burden of city and county zoning regulations -- in order to assure the imperative of efficient and economical delivery of water to customers." (*Id*., at p. 1014.)

The qualified exemption provided in section 53096 applies to those facilities which are "related to storage or transmission of water." This exemption was also examined by the court in *City of Lafayette* v. *East Bay Municipal Utilities District, supra*, 16 Cal.App.4th 1005, as follows:

"We turn to the qualified exemption granted local agencies by section 53096 for facilities `*related* to storage or transmission of water.' (Italics added.) . . . Section 53096 offers an exemption to water districts which is broader in reach than that found in section 53091, extending to all proposals *except* those involving facilities *not* related to storage or transmission of water.

"We think it reasonable to conclude that facilities `related to storage or transmission of water' within the meaning of section 53096 include only those which have a `connection with' and are in fact integral to the proper operation of particular storage and transmission functions of water districts. [Citations.] As we read section 53096, not all support facilities proposed by a water district will qualify for the statutory exemption. The statute seeks to clarify the definition by offering instructive examples of unrelated, nonexempt facilities: `warehouses, administrative buildings or automotive storage and repair buildings.' [Citations.] These listed ancillary structures are not directly connected to the unique function of water storage and transmission, and need not be located in close proximity to qualifying facilities. . . . By acting pursuant to section 53096, water districts may override city and county zoning ordinances to the limited extent necessary to effectuate placement of affiliated facilities upon which storage and transmission of water depend, while local control is retained

6. 94-902

over unrelated facilities which may effectively function independently." (*Id.*, at pp. 1015-1016; fns. omitted.)

We find the analysis contained in the *City of Lafayette* case to be dispositive as to the proper interpretation and application of sections 53091 and 53096 to the operations of California water districts. In answer to the second question, therefore, it is concluded that a California water district is exempt from those county or city building and zoning ordinances which regulate the location or construction of facilities directly and immediately used for the production, generation, storage, or transmission of water, and is conditionally exempt from county or city zoning ordinances with respect to facilities related and integral to the proper operation of particular water storage or transmission functions of the district.

> 3. California Safe Drinking Water Act

The final inquiry is whether a California water district is exempt from county enforcement actions undertaken pursuant to the California Safe Drinking Water Act (Health & Saf. Code, §§ 4010-4039.6; "Act.")[2] We conclude that it would not be exempt.

The Act provides for the establishment of a drinking water regulatory program within the Department of Health Services ("Department"). (§ 4010.) A California water district is a "person" within the meaning of the Act. (§ 4010.1, subd. (e).) No person may operate a public water system unless an application is first submitted to, and a permit received from, the Department. (§ 4011.) The Department may impose such permit conditions, requirements for system improvements, and time schedules as it deems necessary to assure a reliable and adequate supply of water at all times which is pure, wholesome, potable, and does not endanger the health of consumers. (§ 4014.)

The Department's Office of Environmental Health Hazard Assessment is required to establish recommended public health levels for contaminants in drinking water. (§ 4023.) In addition, the Department has adopted primary and secondary drinking water standards for contaminants found in drinking water. (§ 4023.1; Cal. Code Regs., tit. 22, §§ 64431, 64444, 64449.) The Department is further mandated to adopt regulations governing the monitoring, frequency, testing, and reporting of contaminants, and providing for the design, operation, and maintenance of public water systems, including waterworks standards and control of cross-connections determined necessary to obtain, treat, and distribute a reliable and adequate supply of healthy water. (§ 4023.3, subds. (a), (c).) The Department is authorized to grant exemptions or variances from contaminant level requirements or from primary drinking water standards to a public water system. (§§ 4027, 4027.6.)

---

[2]Undesignated section references hereafter are to the Health and Safety Code.

The enforcement provisions of the Act provide for public notification of any noncompliance (§ 4028), suspension or revocation of a permit to operate a public water system (§ 4031), the issuance of citations and imposition of civil penalties for violations of the Act's requirements (§ 4032), compliance or preventive action orders (§ 4033), and court injunctive relief (§ 4034.)

The Department is primarily responsible for the administration and enforcement of the Act. (§ 4010.55.) However, section 4010.7 provides as follows:

"(a) The department may delegate primary responsibility for the administration and enforcement of this chapter within a county to a local health officer authorized by a board of supervisors to assume these duties, by means of a local primacy delegation agreement if the local health officer demonstrates that it has the capability to meet the local primacy requirements established by the department pursuant to subdivision (h) of Section 4023.3. This delegation shall not include the regulation of community water systems serving 200 or more service connections. The local primacy agreement may contain terms and conditions that the department deems necessary to carry out this chapter. The local primacy agreement shall provide that, although the local primacy agency shall be primarily responsible for administration and enforcement of this chapter for the designated water systems, the department does not thereby relinquish its authority, but rather shall retain jurisdiction to administer and enforce this chapter for the designated water systems to the extent determined necessary by the department.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f) The local primacy agency shall act for the department as the primary agency responsible for the administration and enforcement of this chapter for the specified public water systems and shall be empowered with all of the authority granted to the department by this chapter over those water systems."

Subdivision (h) of section 4023.3, referred to in subdivision (a) of the preceding statute, states:

"The department shall adopt rules and regulations it deems necessary to carry out the purposes of this chapter. The regulations shall include, but not be limited to, the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(h) Program requirements for the conduct of the public water system program by a local health officer under a primacy delegation from the

department as set forth in this chapter. The requirements shall include, but not be limited to, the issuance of permits, surveillance and inspections, reporting of monitoring and compliance data, and the taking of enforcement actions."

In addition, section 4010.8 provides:

"This chapter shall not apply to state small water systems except as provided under this section:

"(a) The department shall adopt regulations specifying minimum requirements for operation of a state small water system. The requirements may be less stringent than the requirements for public water systems as set forth in this chapter.

"(b) The minimum requirements for state small water systems adopted by the department pursuant to subdivision (a) shall be enforced by the local health officer or a local health agency designated by the local health officer. In counties which do not have a local health officer, the requirements shall be enforced by the department. Local health agencies may adopt more stringent requirements for state small water systems than those specified in the state regulations.

"(c) The reasonable costs of the local health officer in carrying out the requirements of this section may be recovered through the imposition of fees on state small water systems by the local governing body in accordance with Section 510."

A state small water system is a system for the provision of piped water to the public for human consumption that serves at least 5, but not more than 14, service connections and does not regularly serve more than an average of 25 individuals daily for more than 60 days out of the year. (§ 4010.1, subd. (k).)

Finally, a public water system under the jurisdiction of a local primacy agency is required to pay to that agency in lieu of the Department specified fees for permit applications (§ 4019.15, subd. (c)), for the conduct of activities related to inspections, monitoring, surveillance, and water quality evaluations (§ 4019.10, subd. (f)), for specified costs of enforcement (§ 4019.40, subd. (a)), and for processing any requests for an exemption, variance, or waiver (§ 4019.40, subd. (c)). It is assumed for purposes of this discussion that the California water district in question is a public water system under the jurisdiction of a county which is a local primacy agency.

The applicability of these provisions to a California water district is not governed by the statutes pertaining to compliance by local agencies with the building ordinances of the county in which it is located (Gov. Code, §§ 53090-53097.5), and consequently the provisions therein granting exemptions are not pertinent. For purposes of the latter scheme, the term "`[b]uilding ordinances' means ordinances of a county or city regulating building and construction and removal of buildings, including ordinances relating to the matters set forth in Section 38660 and similar matters, and including ordinances relating to building permits and building inspection." (Gov. Code, § 53090, subd. (b).) Government Code section 38660 provides in turn:

"The legislative body of a city may:

"(a) Regulate the construction of and materials used in all buildings, chimneys, stacks, and other structures and in foundations and foundation walls.

"(b) Regulate the construction, repair, or alteration of buildings pursuant to Health and Safety Code Section 15153.

"(c) Prevent the erection and maintenance of unsafe building walls, chimneys, stacks, or other structures.

"(d) Provide for the summary abatement, destruction, or removal of such unsafe structures and of unsightly or partially destroyed buildings.

"(e) Regulate the construction and location of drains and sewers.

"(f) Regulate the materials used in wiring structures for electricity and in piping them for a water, gas, or electric supply, and regulate the manner of such piping.

"(g) Prohibit the construction of structures not conforming to such regulations."

The Act, on the other hand, is an entirely distinct and comprehensive scheme pertaining to contamination levels in drinking water. Not only are the regulations thereunder not "building ordinances," they are not ordinances at all. Rather, they are regulations of the Department the enforcement of which is delegated to the county health officer pursuant to a "primacy delegation agreement," but subject to retention of jurisdiction in the Department to administer and enforce its regulations "to the extent determined necessary by the department." (§ 4010.7, subd. (a).)[3] The Act is required to be enforced directly by the Department for all

_____

[3]The purity of public drinking water is not a municipal affair, but a matter of statewide

public water systems in any county which does not have a local health officer or which elects not to enforce the Act.   (§ 4010.9.)

If water agencies were exempt from the terms of the Act when the enforcement thereof is undertaken by a county, the Act would be rendered virtually inoperative in such circumstances.   An interpretation allowing broad exemptions in these circumstances would frustrate the intent of state and federal law.   In this regard, the Legislature has expressly declared:

> "It is the intent of the Legislature to improve laws governing drinking water quality to improve upon the minimum requirements of the federal Safe Drinking Water Act Amendments of 1986, to establish primary drinking water standards which are at least as stringent as those established under the federal Safe Drinking Water Act, and to establish a program under this chapter which is more protective of public health than the minimum federal requirements."  (§ 4010, subd. (f).)

The Legislature has also provided in the Act that ". . . this act merely affirms for the state that which has been declared existing law or regulation through action of the federal government." (Stats. 1976, ch. 1087, § 7.)   We note that the federal law (42 U.S.C. § 300f, et seq.) applies, with specified exceptions not applicable here, to "each public water system in each State."  (42 U.S.C. § 300g.)   Manifestly, a state statute adopted or amended for the purpose of operating in harmony with federal law must be construed, not independently, but in conjunction with the federal law.   (*Pearson* v. *State Social Welfare Board* (1960) 54 Cal.2d 184, 214; 62 Ops.Cal.Atty.Gen. 798, 803 (1979).)

It is concluded that a California water system is not exempt from any provisions of the Act, whether administered locally or by the Department.

* * * * *

---

concern.   (26 Ops.Cal.Atty.Gen. 7, 11 (1955).)