[Civ. No. 26137.   Second Dist., Div. One.   Oct. 1, 1962.]

BALDWIN PARK COUNTY WATER DISTRICT et al., Plaintiffs and Respondents, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

88

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Defendants and Appellants.

Burris & Lagerlof, Frank E. Jenney and H. Jess Senecal for Plaintiffs and Respondents.

WOOD, P. J.—The plaintiffs are 14 state governmental agencies which produce and distribute water, in Los Angeles County, for domestic and commercial purposes. Four of the plaintiffs are irrigation districts; nine are county water districts; and one is a California water district. Those respective districts were organized, and are existing, under divisions 11, 12, and 13 of the Water Code of California.

This is a declaratory relief action in which the principal question is whether Ordinance 7834, adopted by Los Angeles County in August 1960, is applicable constitutionally to the

plaintiffs. It may be stated generally that the ordinance provides that all persons or public agencies which supply water for domestic purposes shall comply with certain specified requirements of the county relative to supplying water, and water supply equipment, for fire protection.

The defendants, who are the County of Los Angeles and the county engineer, will be referred to herein as the "county."

The plaintiffs, who will be referred to herein as the "districts," contended at the trial, and now contend on appeal, that the state has occupied the legislative field of regulating water and irrigation districts, that the ordinance is in conflict with general state law, and therefore that the county ordinance is not applicable to them.

The defendant contended at the trial, and now contends on appeal, that the state has not occupied that field, that the ordinance is not in conflict with general state law, and that the ordinance is a reasonable provision within the police power granted to the county by section 11 of article XI of the state Constitution.

The trial judge concluded, among other things, that the state has occupied such legislative field; that the county ordinance is in conflict with general state law; and that the ordinance was not applicable to plaintiffs.

The judgment (1) declared that the ordinance was not applicable to plaintiffs, and (2) enjoined defendants from enforcing the ordinance as against plaintiffs.

Section 100 of the Water Code provides, in part: "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such water is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare." Section 102 of that code provides: "All water within the State is the property of the people of the State, but the right to the use of water may be acquired by appropriation in the manner provided by law." Section 104 provides: "It is hereby declared that the people of the State have a paramount interest in the use of all the water of the State and that the State shall determine what water of the State, surface and underground, can be converted to public use or controlled for public protection."

The Water Code provides for the formation and regulation of state agencies for the purposes of controlling and distributing water. Among those agencies are irrigation districts, county water districts, and California water districts.

Division 11 of the Water Code, which is entitled "Irrigation Districts," includes provisions regarding: the method of forming such a district, and the area thereof (pt. 2); the qualifications, tenure, compensation, powers, and duties of the directors, and the management of a district (pt. 3); the elections therein (pt. 4); the powers and purposes of such a district, and the construction of the waterworks system (pt. 5); regulation of the financial affairs of a district (pt. 8); issuance of bonds (pt. 9); and levying assessments (pt. 10). The area which may be included in an irrigation district is "land susceptible of irrigation from a common source and by the same system of works. . . ." (Wat. Code, § 20700.) ▮ It thus appears that the land which may be included in an irrigation district is not limited to land in one county, but it may be land in two or more counties. The powers of an irrigation district include the right to: perform "any act necessary to furnish sufficient water in the district for any beneficial use" (§ 22075); "deliver water for fire protection purposes" (§ 22077); control, distribute, store, purify, and salvage any water for the beneficial use of the district or its inhabitants (§ 22078); fix and collect charges for use of water (§ 22280); hold, acquire, manage, sell, or lease the property of the district. Section 21385 provides: "The board [of directors] except as otherwise specifically provided has the power and it shall be its duty to manage and conduct the business and affairs of the district." Section 22309 provides: "The works [of an irrigation district] shall be constructed under the direction and to the satisfaction of the engineer of the district and be subject to the approval of the board [of directors]." It thus appears that the Legislature has given broad powers to irrigation districts with respect to the control and distribution of water in the districts; has provided that the management of the affairs of the district shall be in the board of directors; and has provided that the construction of the system of waterworks of the district shall be under the direction of the district engineer, subject, however, to the approval of the board of directors.

Division 12 of the Water Code, which is entitled "County Water Districts," includes provisions regarding: the method

of forming such a district, and the area thereof (pt. 2); the qualifications, tenure, compensation, powers, and duties of the directors (pt. 3); the elections therein (pt. 4); the powers and purposes of a district, the management of the district, and the construction of the waterworks system (pt. 5); regulation of the financial affairs (pt. 6); and levying taxes (pt. 7). Section 30200 provides: "The people of a county or two or more contiguous counties or a portion of such county or counties, whether the portion includes unincorporated territory or not, may form a county water district pursuant to this part." ██ It thus appears that the land which may be included in a county water district is not limited to land in one county, but it may be land in two or more counties. Section 31000 provides: "County water districts shall be managed under the provisions of this division [12] and may exercise the powers therein expressly granted or necessarily implied therefrom." Powers expressly granted to a county water district include the right to: perform "all acts necessary to carry out fully the provisions of this division [12]" (§ 31001); perform "any act necessary to furnish sufficient water in the district for any present or future beneficial use" (§ 31020); "store water for the benefit of the district" (§ 31021); operate waterworks and property necessary to convey, supply, store, or make use of water (§ 31022); sell water for any useful purpose and "whenever there is a surplus, dispose of the surplus to municipalities, public agencies, or consumers located without the district" (§ 31023); "establish rules and regulations for the sale, distribution, and use of water" (§ 31024); "to restrict the use of district water during any emergency caused by drought, or other threatened or existing water shortage, and to prohibit the wastage of district water or the use of district water during such periods, for any purpose other than household uses or such other restricted uses as may be determined to be necessary by the district and may prohibit use of such water during such periods for specific uses which the district may from time to time find to be nonessential" (§ 31026); "acquire, construct, and operate facilities for providing fire protection to the district and its inhabitants, including buildings, engines, hose, . . . and other appliances for the full equipment of a fire company" (§ 31120); cooperate with the state or any agency thereof, municipalities, public and private corporations, and persons with respect to salvage, control, storage, distribution, purification, and recapture of any

waters, and the construction of any works, the acquisition of any property, or for the protection of property, watersheds, water courses, and the underground water supplies, and for the use, operation, management, or control of any public works or property (§ 31048) ; "construct any works along, under, or across any street, water course, railway, or conduit in a manner that will afford security for life and property" (§ 31060). Section 30576 provides: "The powers of [county water] districts enumerated in this division [12] shall, except as therein otherwise provided, be exercised by the board [of directors]." Section 30580 provides that the general manager of a county water district shall have "full charge and control of the maintenance, operation, and construction of the water works or water-works system of the district." It thus appears that the Legislature has given broad powers to county water districts with respect to the control and distribution of water in the districts; and has provided that the management of the affairs of the district and the construction of the system of waterworks shall be under the direction of the board of directors.

Division 13 of the Water Code, which is entitled "California Water Districts," includes provisions regarding: the method of forming such a district, and the area thereof (pt. 2) ; the qualifications, tenure, powers and duties of the directors, and the management of a district (pt. 3) ; the elections therein (pt. 4) ; the powers and purposes of a district, and the construction of the waterworks system (pt. 5) ; regulation of the financial affairs (pt. 6) ; and levying assessments (pt. 7). The area which may be included in a California Water District, is "land which is susceptible of irrigation from a common source and by the same system of works." (Wat. Code, § 34153.) ▮▮ It thus appears that the land which may be included in a California Water District is not limited to land in one county, but it may be land in two or more counties. The powers of a California Water District include the right to: "perform all acts necessary or proper to carry out fully the provisions of this division [13]" (§ 35400) ; acquire, construct, maintain, and operate the necessary works for the production, storage, transmission, and distribution of water for irrigation, domestic, industrial, and municipal purposes, and any drainage or reclamation works connected therewith (§ 35401) ; "enter into a contract for the lease, sale, or use of any surplus water not then necessary for use within the

district'' (§ 35425); ''within or without the district in the State, acquire by purchase, condemnation, or other legal means all property or rights in property necessary or proper for the district works and to supply the land with sufficient water for irrigation purposes'' (§ 35600). Section 34807 provides: ''The board [of directors of a California Water District], except as otherwise specifically provided, shall manage and conduct the business and affairs of the district.'' It thus appears that the Legislature has given broad powers to California Water Districts with respect to the control and distribution of water in the district and has provided that the management of the affairs of the district be in the board of directors.

On August 2, 1960, the Board of Supervisors of Los Angeles County adopted Ordinance No. 7834, entitled ''Water Ordinance.'' Section 1 of that ordinance provides: ''The purpose of this ordinance is to promote and obtain a reasonable minimum level of fire protection performance for water supply facilities constructed, replaced, extended or rehabilitated to serve new subdivisions and residential, commercial and industrial improvements in the unincorporated area of the County of Los Angeles.'' Section 81 provides: ''The term 'Water System' shall mean the source facilities transmission pipelines and the distribution system and shall include all those facilities of the water system under the complete control of the utility, up to the customer's connection.'' Section 82 provides, in part: ''The term 'Water Utility' shall mean any person, firm, private, quasi-public or public agency supplying or purporting to supply water to more than one retail customer. . . .'' Section 151 provides, in part: ''A person to whom constitutionally this ordinance can apply shall not construct any portion of a water system which is subject to the provisions of this ordinance without first having obtained a Water Utility Certificate of Registration. Such registration may be accomplished by filing with the [county] Engineer'' a form (therein set forth) which shall include the statement: ''I am familiar with the terms of the Water Ordinance and I agree to abide by the terms therein.'' Section 152 provides: ''Plans and Specifications for water service to new subdivisions shall be submitted to the [county] Engineer. . . . For new subdivisions the water system plans and specifications . . . shall include a certificate from a water utility that the proposed system can be operated by the water utility, and that the system will in every particular, meet the requirements of this

ordinance." Section 154 provides: "A person legally required to comply with this Ordinance and not having a water utility certificate of registration shall not construct any portion of a water system subject to the provisions of this Ordinance without first having obtained a Water Utility Authorization." Section 155 contains provisions with respect to the form of, the place of filing, and the processing of an application for a Water Utility Authorization. It is therein provided (§ 155) that the county engineer shall process the application, and that the applicant shall revise his plans and specifications as required by the engineer.

Chapter II of the ordinance, which is entitled "Requirements of Service Design and Construction," sets forth requirements as to total water flow, average daily water flow, water flow for fire protection, water pressure, size of mains and service pipes, and location of valves. Section 232 provides that the size and type of the fire hydrants shall be designed by the county forester and the location shall be approved by the forester and fire warden, and the road commissioner. Section 252 provides: "If the [county] Engineer finds that, in order to comply with the provisions of this Ordinance it is necessary to conform to certain standards of materials and construction or both, he shall promulgate such standards and publish the same in a Utility Manual. The Engineer shall file this Utility Manual and all amendments thereto with the Board [of Supervisors]. All construction and materials shall conform to the Utility Manual described in this Section."

The ordinance also provided that an appeal may be taken to an appeals board from any decision made pursuant to the ordinance; that an appeal may be taken from the decision of that board to the board of supervisors of the county; that an appeal may be taken from a decision of the board of supervisors to a court; and that all persons shall comply with a final decree made pursuant to the ordinance.

Section 11 of article XI of the state Constitution provides: "Any county, city . . . may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

In *Agnew* v. *City of Los Angeles,* 51 Cal.2d 1, 5 [330 P.2d 385], it was said: "A local municipal ordinance that is in conflict with a general law adopted by the Legislature is invalid if it attempts to impose additional requirements in a field that is preempted by the general law."

In *Abbott* v. *City of Los Angeles,* 53 Cal.2d 674, 681 [3 Cal.Rptr. 158, 349 P.2d 974], it was said: "The power granted by section 11 of article XI is not only a delegation of power by the people to the local body, but it is also a limitation upon the local body. . . . When there is a doubt as to whether an attempted regulation relates to a municipal or to a state matter, or if it be the mixed concern of both, the doubt must be resolved in favor of the legislative authority of the state [citations]. These rules are not limited in their application to situations where a local body attempts to enact legislation the actual language of which conflicts with previously enacted state law. These rules also prevent any legislation by a local body (other than in furtherance of the state law) when the entire field, that is the subject matter of the ordinance, has already been fully occupied by the state. Thus the Constitution prohibits a city from imposing additional requirements in a state occupied field. . . ."

In *Hall* v. *City of Taft,* 47 Cal.2d 177 [302 P. 2d 574], defendant city contended that its building ordinance was applicable to a school district by reason of the city's police power under section 11 of article XI of the state Constitution. In affirming a judgment which enjoined the city from enforcing the ordinance against the plaintiff (building contractor), it was said, at page 181: "The public school system is of state-wide supervision and concern and legislative enactments thereon control over attempted regulation by local government units. . . . School districts are agencies of the state for the local operation of the state school system." It was also said therein (p. 183) : "When it [state] engages in such sovereign activities as the construction and maintenance of its buildings . . . it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation. Section 11 of article XI of the state Constitution, *supra,* should not be considered as conferring such powers on local government agencies."

After the decision in *Hall* v. *City of Taft, supra,* sections 53090 and 53091 of the Government Code were enacted. Those sections defined "Local agency" and provided such an agency should comply with applicable building and zoning ordinances of a county or city where the agency was located; but it was expressly provided therein that such ordinance should not apply to the "location or construction of facilities

for the production, generation, storage, or transmission of water or electrical energy by a local agency.''

In the present case, provisions of the Water Code indicate that the Legislature did not intend that irrigation or water districts should be subject to legislation by counties. One of such provisions is that the area of such districts may be in more than one county. It is apparent that the Legislature did not intend that a county enact legislation controlling activities of a district which extended into another county. If each county, in which there is a portion of a district, should enact legislation purporting to control the activities of the district, it is obvious there would be confusion as to rules and regulations. Likewise, if a city or cities within a district in a county were to enact legislation purporting to control the affairs of the district there would be confusion.

In the present case, the county ordinance is in conflict with the state legislation. One respect in which there is such a conflict is that the Water Code provides that the matter of constructing the waterworks system (for an irrigation district or a county water district) is within the duties of the district engineer or manager, subject to the approval of the board of directors of the district; whereas, the ordinance requires that the district obtain from the county a certificate of registration or a water utility authorization prior to constructing any part of the water system. With reference to a California water district, the Water Code does not refer expressly to the district engineer or manager in connection with the duty of construction, but it provides that such duty rests with the directors of the district. Another respect in which there is a conflict is that the Water Code provides that the management and control of the district is within the powers conferred on the directors of the district; whereas, the ordinance requires as a condition to obtaining such a county permit for construction the applicant must state on the application form that he agrees to abide by the provisions of the ordinance. Another conflict is that the Water Code provides that the district shall determine the amount of water to be made available for fire protection and other uses; whereas, the ordinance designates the minimum amount of water flow for fire protection and other uses. Another conflict is the provision of the ordinance setting up an appeals board (and specifying other appellate procedure) for reviewing determinations made by the district directors, who derive their powers under provisions of state

law. It is obvious that the ordinance purports to impose upon the districts requirements in addition to those imposed by the Legislature. The trial court properly concluded that the county ordinance was in conflict with general state law.

Many provisions of the Water Code, and of the county ordinance, have been referred to hereinabove in some detail. ██ "In determining whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the 'whole purpose and scope of the legislative scheme' . . . ." (*In re Lane,* 58 Cal.2d 99, 102-103 [22 Cal.Rptr. 857, 372 P.2d 897].) ██ The Water Code shows an intention by the Legislature to adopt a general and complete scheme and plan for conserving water, and regulating the production, control, distribution, and use of water by such water districts as those involved herein. The trial court properly concluded that the state has occupied the legislative field with respect to the subject of water conservation and regulation by irrigation districts, and by county and California water districts; and properly concluded that Ordinance 7834 is not applicable to plaintiffs.

In view of the above conclusions, it is not necessary to determine other contentions on appeal.

The judgment is affirmed.

Lillie, J., concurred.

A petition for a rehearing was denied October 25, 1962, and appellants' petition for a hearing by the Supreme Court was denied November 28, 1962.