[No. G008731. Fourth Dist., Div. Three. Dec. 26, 1990.]

THE PEOPLE ex rel. EDWARD J. COOPER, as City Attorney, etc., et al., Plaintiffs and Appellants, v. RANCHO SANTIAGO COLLEGE et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

* Pursuant to California Rules of Court, rule 976(b) part I of the Discussion is not published, as it does not meet the standards for publication.

---

---

---

**COUNSEL**

Edward J. Cooper, City Attorney, Richard E. Lay, Assistant City Attorney, and Frank L. Rhemrev, Deputy City Attorney, for Plaintiffs and Appellants.

Liebert, Cassidy & Frierson and Mary L. Dowell for Defendants and Respondents.

---

**OPINION**

**MOORE, J.**—The primary question presented in this appeal is whether Government Code section 53094 permits a school district to render a city

zoning ordinance inapplicable to a commercial swap meet conducted in the district's parking lot.[1] We hold it does not.

FACTS

On January 12, 1988, Rancho Santiago College (College), a community college in the City of Santa Ana (City), and the Santiago Club (Club), an organization neither affiliated with nor part of College, entered into an agreement allowing Club to operate a swap meet in College's parking lot on Sundays from 8 a.m. to 6 p.m.[2] The swap meet began operation January 17. While College does not participate in operating the swap meet, both it and the Rancho Santiago College Foundation receive a percentage of the swap meet's gross receipts.

On January 21, City and its attorney filed a one-count complaint against College and Club to enjoin operation of the swap meet. City alleged the

---

[1] Section 53094 provides in part: "Notwithstanding any other provisions of this article except Section 53097, the governing board of a school district . . . may render a city . . . zoning ordinance inapplicable to a proposed use of property by such school district except when the proposed use of the property by such school district is for nonclassroom facilities, including, but not limited to, warehouses, administrative buildings, automotive storage and repair buildings . . . . [T]he city . . . may commence an action . . . seeking a review of such action of the governing board of the school district [and if] the court determines that such action was arbitrary and capricious, it shall declare it to be of no force and effect, and the zoning ordinance in question shall be applicable to the use of the property by such school district."

Government Code section 53097 provides in part: "Notwithstanding any other provisions of this article, the governing board of a school district shall comply with any city . . . ordinance (1) regulating drainage improvements and conditions, (2) regulating road improvements and conditions, or (3) requiring the review and approval of grading plans as such ordinance provisions relate to the design and construction of onsite facilities and improvements, and shall give consideration to the specific requirements and conditions of city . . . ordinances relating to the design and construction of offsite improvements . . . ."

For convenience, we will refer to Government Code section 53094 as section 53094.

[2] The agreement provides: "The Santiago Club hereafter referred to as the 'Club' and Rancho Santiago Cummunity [sic] College, hereafter referred to as the 'College' hereby agree to the following: [¶] 1) The Club shall use campus parking lot area no. 6 for the purpose of conducting a 'Mercado', (open market). [¶] 2) Said Mercado shall commence Sunday, January 17, 1988, from 8:00 a.m. to 6:00 p.m., and continue every subsequent Sunday thereafter . . . except as provided in this agreement. [¶] 3) This agreement shall terminate July 3, 1988, or after either party provides the other party with a 30 day written notice. [¶] 4) The Club shall provide, security, management, personnel, restrooms, directional signs, parking assignments, and clean-up of the area. [¶] 5) The Club shall provide the college with proof of insurance to operate the Mercado. [¶] 6) The College will provide the Club with 30 days notice prior to the use of area by any other community organization or the College in which the use conflicts with this agreement. The Club will waive use of the area upon receipt of the notice and make the area available for others to occupy. [¶] 7) In consideration for the use of the area the Club will pay to the College twenty percent (20%) of the 'Mercado' gross receipts. In addition to the preceding 20% payable to the college [sic], the Club shall pay to the Rancho Santiago College Foundation twenty percent (20%) of the amount paid to the College."

parking lot is zoned open space under its zoning ordinances, and a swap meet is not a permitted use. On February 23, College adopted a resolution pursuant to section 53094 declaring City's zoning ordinances inapplicable to "all property of the college" in Santa Ana and "all uses of [its] property.[3] Thereafter, City amended its complaint adding causes of action challenging the validity of the resolution, and alleging both the operation of the swap meet and adoption of the resolution violated the California Environment Quality Act. (Pub. Resources Code, § 21000 et seq. (CEQA).)

City filed a motion for a peremptory writ of mandate seeking to void both the parties' agreement and the College's resolution on all of the grounds alleged in the amended complaint. On August 10, 1989, the motion was granted in part. The trial court found the agreement to operate the swap meet constituted a project under CEQA, voided the contract, and ordered College to prepare an initial environmental study. But Club was permitted to continue operating the swap meet pending further order of the court. The court refused to decide whether College validly adopted its resolution. City appealed.

While the appeal was pending, College completed its initial study and issued a resolution declaring the swap meet would not have a significant impact on the environment. On April 26, 1990, respondents filed a supplemental return to the trial court's writ. City objected to the return and again moved for a peremptory writ challenging College's authority to adopt the resolution under section 53094. On July 13, the trial court overruled City's objections to the return and denied the writ.

---

[3] The College resolution provides: "WHEREAS California Government Code Section 53094 authorizes a community college district to adopt a declaration that it is exempt from a city or county zoning ordinance; and [¶] WHEREAS the City of Santa Ana has taken the position that its zoning regulations, and in particular Division 23, Sections 41-584 and 41-585 of the Santa Ana Municipal Code, apply to the use of college property; and [¶] WHEREAS the City of Santa Ana has declared that all property of Rancho Santiago College located within the City of Santa Ana is designated 'O' space; and [¶] WHEREAS the Board members and administration of Rancho Santiago College have had many discussions with representatives of the City of Santa Ana, and the City still maintains its position that the college's property is subject to its zoning ordinances and that it will grant no variances to the college for uses which the City deems to be in violation of its ordinances; and [¶] WHEREAS the operation of the City's zoning ordinances are [sic] reducing the ability of the college to use its property for the benefit of all its students and the Rancho Santiago College community, [¶] THEREFORE BE IT RESOLVED THAT: [¶] Rancho Santiago College, in accordance with Government Code Section 53094, hereby declares the zoning ordinances of the City of Santa Ana inapplicable to all property of the college within the City of Santa Ana, including but not limited to Parking Lot 6 and Parking Lot 7; and be it further resolved that, [¶] Rancho Santiago College, in accordance with Government Code Section 53094 hereby declares the zoning ordinances of the City of Santa Ana inapplicable to all uses of the property of the college within the City of Santa Ana."

Discussion

I*

. . . . . . . . . . . . . . . . . . . . . . .

II

Section 53094 permits a school district to declare a city zoning ordinance inapplicable to a proposed use of district property, unless the proposed use is for "nonclassroom facilities." The statute defines this phrase in broad terms, but does not expressly state whether the use of a school district parking lot for a commercial swap meet by a third party is a non-classroom facility.

The legislative history of section 53094 and the scope of the "nonclassroom facilities" exception were recently considered in *City of Santa Cruz* v. *Santa Cruz Schools Bd. of Education* (1989) 210 Cal.App.3d 1 [258 Cal.Rptr. 101]. There, the Court of Appeal for the Sixth District held the replacement of lighting fixtures on a high school's athletic field could be exempted from a city's zoning ordinance.

In so ruling, the *Santa Cruz* court concluded the Legislature enacted section 53094 to "[strike] a balance . . . between state educational and local regulatory interests and control." (210 Cal.App.3d at p. 6.) The court explained the "nonclassroom facilities" exception as follows: "Although the current law concerning which agencies have to follow what local regulations is a tangle of prohibitions and exceptions, lacking a single, articulable organizing principle, the amendments to section 53094 do suggest a legislative conclusion that the relationship between school boards and their 'nonclassroom facilities' is not significantly different from the relationship between other state agencies and their property, which, in fact, could also be characterized as 'nonclassroom facilities,' and therefore, state educational policy does not reasonably or logically justify continued permission for school boards to exempt their 'nonclassroom facilities' from local control. As to what 'nonclassroom facilities' are, the legislative genealogy of section 53094 further suggests that 'nonclassroom facilities' are those that are not by their nature so directly or sufficiently related to a school board's unique function as to distinguish it from any other local agency.

---

*See footnote, *ante*, page 1281.

"The statute itself confirms and helps clarify this suggestion by enumerating instructive examples of 'nonclassroom facilities.' The statute lists 'warehouses, administrative buildings, [and] automotive storage and repair buildings[.]' These facilities have nothing directly to do with *classroom* activities. Rather, they are devoted completely to ancillary, noninstructional functions. Thus, we perceive in section 53094 an intention to distinguish between instructional and support facilities. Accordingly, we consider it reasonable and consistent with the legislative history and purpose of section 53094 to interpret 'nonclassroom facilities' to mean those not directly used for or related to student instruction. [Citation.] Moreover, this interpretation preserves the balance in section 53094 between the state's strong interest [in] public education and the value of local zoning controls. [Fn. omitted.]" (210 Cal.App.3d at pp. 7-8.)

*Santa Cruz* correctly resolves the tension between the state's interest in education and the local entity's interest in zoning control. Based on that standard, a commercial swap meet operated by a third party on a community college district's property cannot be exempted from a city's zoning ordinance under section 53094.

College makes no effort to argue the swap meet is part of the educational process of the school. It is not sponsored by anyone connected with the school as part of the educational process. College tries to tie the swap meet into the educational process by noting that 20 percent of its proceeds are turned over to the school, and the income (approximately $5,700 per month) funds instructional programs which benefit both College and its students. We are unpersuaded by this financial argument. Taken to its logical extension, if a school district could exempt itself from a city's zoning controls simply by receiving some remunerative return for use of its property, section 53094 would become meaningless. There is no justification for exempting this commercial enterprise from City's zoning ordinance.

## DISPOSITION

The July 13 order is amended by adding to it a paragraph granting judgment for defendant on the second amended complaint's third and fourth causes of action. In the interests of justice, the notice of appeal filed October 2, 1989, is treated as filed immediately after entry of the July 13 judgment. The judgment is reversed and the matter remanded to the lower court with directions to issue a writ invalidating the resolution adopted by

College and enjoining operation of the swap meet on College's property in violation of City's zoning laws.[4]

Wallin, Acting P. J., and Sonenshine, J., concurred.

---

[4] In light of our determination section 53094 does not authorize College to exempt itself from City's zoning ordinances, we need not reach the other issues raised on appeal.