[No. A057840. First Dist., Div. One. June 23, 1993.]

CITY OF LAFAYETTE, Plaintiff and Respondent, v.
EAST BAY MUNICIPAL UTILITY DISTRICT et al., Defendants and
Appellants.

**COUNSEL**

Robert B. Maddow, Verna P. Bromley, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Peter J. Busch, Ethan P. Schulman and Anne E. Mudge for Defendants and Appellants.

Weissburg & Aronson and Gregory V. Moser as Amici Curiae on behalf of Defendants and Appellants.

Williams & Woods, Charles J. Williams and Teresa L. Highsmith for Plaintiff and Respondent.

Linda A. Callon, City Attorney (Gilroy), Berliner Cohen, Russell J. Hanlon and Nicholas P. Petredis as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

NEWSOM, J.—The East Bay Municipal Utility District (hereafter appellant or the District) is a municipal utilities district which provides water to customers in Alameda and Contra Costa Counties, including the City of Lafayette (hereafter respondent or the City). The District owns property in the City on which it has operated a filter plant since 1929. The property, consisting of approximately 25 acres, is zoned single-family residential and designated in the City's General Plan as "public use" property, which provides for nonresidential use with approval in the form of a land use permit. The essential function of the filter plant has been to treat raw water for delivery to the District's customers. Existing facilities at the filter plant include filter beds, water storage tanks, equipment, sheds or yards, pumping plants, warehouses, chemical buildings and an office building.

The filter plant property lies within the "East Area," one of the four geographic areas of operation into which the District is divided, and includes the City. In 1983, the District began the process of expanding and improving facilities in the East Area to accommodate population growth and an attendant increased demand for water. The East Area Service Center has been located in Walnut Creek since 1962, and was considered inadequate for present needs. Various potential sites for a new East Area Service Center were identified and considered. The filter plant site in Lafayette, on 25 acres of property (hereafter the Lafayette Site), was found to satisfy all of the District's important criteria for location of the new East Area Service Center (hereafter EASC): a centralized location; a sufficiently large parcel of property; and a "public use" designation. Thus, in 1986, the Lafayette Site was designated as the District's preferred alternative for location of the EASC project.

The environmental review process for the EASC project commenced in 1988, and was quite extensive. In response to local opposition to the project,

the District modified the original proposal by deleting the "watershed head-quarters," thereby reducing the geographic area of the project to 3.8 acres, relocating parking and storage areas to the interior of the project area, redesigning driveways, adding landscaping, and providing an "acceleration lane" on Mount Diablo Boulevard. A former reduction in the scale of the project was also considered during the environmental review process, but rejected by the District as inefficient and incomplete. The final environmental impact report (hereafter EIR) drafted by the District concluded that the EASC project could be built with insignificant adverse environmental impacts after implementation of identified mitigation measures. The adequacy of the final EIR was never challenged.

While the EIR process was proceeding, the District filed an application with the City for a land use permit for the EASC project.[1] Although the City Planning Commission staff recommended approval of the permit as consistent with the "General Plan" and "not . . . detrimental to the health, safety, and general welfare of the City," opposition to the project persisted. Following public hearings and unsuccessful attempts to mediate the controversy, on November 26, 1990, the City denied the District's application for a land use permit.

In response, on December 11, 1990, the District, acting under the authority of Government Code sections 53091 and 53096,[2] enacted two resolutions which purportedly rendered "inapplicable" the City's zoning ordinance and approved the EASC project as described in the final EIR. The District made the following findings in support of the resolutions: "The proposed East Area Service Center Project is necessary to enable the District to operate and maintain its water transmission facilities in the East Area Service region"; "there is no feasible alternative to the proposed East Area Service Center project, and the proposed East Area Service Center site is the only feasible site which would enable the District to economically provide all its customers with an equal level of high quality water service and quickly respond to pipeline emergencies in East Area"; "the potentially significant effects of the proposed project will be mitigated to acceptable levels by the imposition of various mitigation measures . . . discussed in the Final EIR;" "the City of Lafayette's Zoning Ordinance Code does not apply to this project pursuant to Government Code Sections 53091 and 53096, as the District's Reduced Scale East Area Service Center project is a facility for the transmission and

---

[1]The District at all times maintained that it had an exemption from the City's zoning ordinances and land use permit requirements, but nevertheless filed an application for a land use permit while reserving the right to claim an exemption.

[2]Unless otherwise indicated, all further statutory references are to the Government Code.

storage of water and therefore exempt from local ordinances regulating location or construction of such facilities and, additionally, because this Board of Directors has rendered the City of Lafayette's Zoning Ordinance Code and all Sections thereof inapplicable to this project . . . ."

The EASC project as approved by the District has the "primary function" of ensuring "proper and continued transmission of water to customers" by providing "corporation yard support and administration headquarters" for the District's water transmission and storage system in the East Area. "The project would consist primarily of materials storage, warehousing, vehicle maintenance facilities, administration buildings and parking." In the allotted 3.8 acres of space, the District proposes to construct a one-story office building with essential facilities for employees and an attached warehouse, a separate storage building with workshops, outside storage areas for necessary materials and equipment, and parking spaces for a peak staff of approximately 85 employees.

The "most important maintenance functions" of the employees stationed at the EASC project are maintenance and repair of the essential facilities in the East Area for the transmission of water to District customers. Duties of the employees at the EASC project will include inspection and repair of pipelines, valves and hydrants, maintenance work at filter plants, installation of emergency reservoir drain valves, maintenance of aqueducts and pumping plants, and response to emergency complaints by customers.

After the District's approval of the EASC project, the City filed a petition for writ of administrative mandamus and complaint for injunctive and declaratory relief. In this action, the City has challenged the District's two resolutions and seeks an order prohibiting the District from proceeding with the project without a land use permit from the City. Following a hearing, the trial court issued a "notice of decision" in which it found that the EASC project proposes facilities which "are *not* facilities for the production, generation, storage and transmission of water" within the meaning of the exemptions from the City's zoning ordinances provided by section 53091. The court further found that "although the proposed facilities are *related* to the storage and transmission of water, section 53096 does not exempt warehouses, administrative buildings, and automotive storage and repair buildings. *To the extent* the proposed facilities fall within these categories, they are subject to local zoning ordinances." (Italics added.) Judgment was

entered in favor of the City on its causes of action for declaratory relief.[3] Thus, the District's resolutions were declared invalid, and the District was ordered bound by the City's denial of the land use permit for the EASC project.

In this appeal, the District makes two related arguments. First, the District contends that the EASC project encompasses "the location or construction of facilities for the production, generation, storage, or transmission of water" within the meaning of section 53091, and therefore is entitled to an absolute exemption from the City's zoning ordinances. In the alternative, the District maintains that the proposed facilities fall within the scope of the qualified exemption from city zoning ordinances found in section 53096, which in pertinent part provides: "(a) Notwithstanding any other provisions of this article, the governing board of a local agency, by vote of four-fifths of its members, may render a city or county zoning ordinance inapplicable to a proposed use of property if the local agency at a noticed public hearing determines by resolution that there is no feasible alternative to its proposal, except when the proposed use of the property by such local agency is for facilities not related to storage or transmission of water or electrical energy, including, but not limited to, warehouses, administrative buildings or automotive storage and repair buildings."

(1) The parameters of the exemptions granted local agencies (such as the District) from city and county zoning ordinances under sections 53091 and 53096 have not been delineated, and so our task is to construe the statutes with the paramount objective of ascertaining the legislative intent. (*Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 294 [285 Cal.Rptr. 86, 814 P.2d 1328]; *Agresti* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 599, 604 [7 Cal.Rptr.2d 353]; *Estate of Sanders* (1992) 2 Cal.App.4th 462, 470 [3 Cal.Rptr.2d 536].) We will first examine the language of the statutes, giving significance to every word, phrase, sentence and part of an act in furtherance of the legislative purpose. (*Nickelsberg*, *supra*, at p. 294; *People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420]; *Redevelopment Agency* v. *Arvey Corp.* (1992) 3 Cal.App.4th 1357, 1362 [5 Cal.Rptr.2d 161]; *Estate of Sanders*, *supra*, 2 Cal.App.4th at p. 470.) And we must also consider such matters as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction. (*Agresti* v. *Department of Motor Vehicles*, *supra*, at p. 604;

---

[3]The City's remaining causes of action were rendered moot by the trial court's determination that the EASC project does not qualify for the exemptions offered by sections 53091 and 53096.

*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722]; *United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 170 [154 Cal.Rptr. 263].)

(2) The interpretation of a statute is a question of law which we determine independently. (*A1-Sal Oil Co.* v. *State Bd. of Equalization* (1991) 232 Cal.App.3d 969, 975 [283 Cal.Rptr. 843]; *Schuhart* v. *Pinguelo* (1991) 230 Cal.App.3d 1599, 1607 [282 Cal.Rptr. 144].) We are not bound by the evidence presented in the trial court on the issue of interpretation of the statutes. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Haworth* v. *Lira* (1991) 232 Cal.App.3d 1362, 1367 [284 Cal.Rptr. 62].)

2(3) Section 53091[4] generally requires local agencies, such as appellant, to comply with the building and zoning ordinances of cities and counties in which they are situated. (*Lawler* v. *City of Redding* (1992) 7 Cal.App.4th 778, 783 [9 Cal.Rptr.2d 392]; *Regents of University of California* v. *City of Santa Monica* (1978) 77 Cal.App.3d 130, 137 [143 Cal.Rptr. 276]; *City of Santa Clara* v. *Santa Clara Unified Sch. Dist.* (1971) 22 Cal.App.3d 152, 158 [99 Cal.Rptr. 212].) Section 53091 is part of a statutory scheme—"Regulation of Local Agencies by Counties and Cities," sections 53090 through 53095 (Stats. 1959, ch. 2110, § 1, pp. 4907-4909)—enacted in response to opinions[5] which broadly immunized all state agencies from local regulatory control. (*City of Santa Cruz* v. *Santa Cruz City School Bd. of Education* (1989) 210 Cal.App.3d 1, 5 [258 Cal.Rptr. 101] (hereafter *City of Santa Cruz*); *City of Santa Clara* v. *Santa Clara Unified Sch. Dist., supra*, 22 Cal.App.3d at p. 157; *Baldwin Park County Water Dist.* v. *County of Los Angeles* (1962) 208 Cal.App.2d 87, 95-96 [25 Cal.Rptr. 167]; 40 Ops.Cal.Atty.Gen. 243, 246 (1962).) Section 53091 evinces a legislative intent to vest in cities and counties control over zoning and building restrictions, thereby strengthening local planning authority. (*Lawler* v. *City of Redding, supra*, at p. 783; *Modesto Irr. Dist.* v. *City of Modesto* (1962) 210 Cal.App.2d 652, 656 [27 Cal.Rptr. 90]; 37 Ops.Cal.Atty.Gen. 89, 91 (1961).)

Superimposed upon the legislative grant of authority to cities and counties to impose zoning and building regulations upon local water districts are two

---

[4]In pertinent part, section 53091 provides: "Each local agency shall comply with all applicable building ordinances and zoning ordinances of the county or city in which the territory of the local agency is situated. . . . [¶] Zoning ordinances of a county or city shall not apply to the location or construction of facilities for the production, generation, storage, or transmission of water . . . ."

[5]*Hall* v. *City of Taft* (1956) 47 Cal.2d 177 [302 P.2d 574] and *Town of Atherton* v. *Superior Court* (1958) 159 Cal.App.2d 417 [324 P.2d 328].

enumerated exceptions: the first, an absolute exemption under section 53091 for "facilities for the production, generation, storage, or transmission of water"; the second, a carefully conditioned, qualified exemption (§ 53096), which the local agency must properly exercise, for facilities "related to storage or transmission of water." Unless exempted, water districts must abide by local planning decisions of cities and counties. (*City of Santa Clara v. Santa Clara Unified Sch. Dist., supra,* 22 Cal.App.3d at p. 158.) When read as a statutory scheme, the obvious intent of the Legislature was to strike a balance between the value of local zoning control by cities and counties and the state interest in efficient storage and transmission of water. (Cf. *People* ex rel. *Cooper* v. *Rancho Santiago College* (1990) 226 Cal.App.3d 1281, 1286 [277 Cal.Rptr. 69]; *City of Santa Cruz, supra,* 210 Cal.App.3d at p. 8.)

■ Having these principles in mind, we conclude that the District's EASC project, while it may be a "facility," still does not fall within the absolute exemption of section 53091. A "facility" has been defined as " 'something that promotes the ease of any action, operation, transaction, or course of conduct[;] . . . something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end.' " (*City of Santa Cruz, supra,* 210 Cal.App.3d at p. 4, quoting from Webster's Third New Internat. Dict. (1981) pp. 812-813.) The EASC project is a facility for the storage of materials and equipment necessary for maintenance and repair of aqueducts, pipelines, fitter plants and reservoirs. Thus, it serves as a support facility; it does not actually perform the function of generating, transmitting or storing water. We think that the absolute exemption of section 53091 was intended to be limited to facilities *directly and immediately* used to produce, generate, store or transmit water. Only those indispensable facilities must be geographically located at the unfettered discretion of a water district—that is, without the burden of city and county zoning regulations—in order to assure the imperative of efficient and economical delivery of water to customers. In section 53091 we perceive an intention to distinguish between the essential components of a water storage and transmission system, and those support facilities proposed in the EASC project, with only the former granted absolute immunity from local control. (Cf. *City of Santa Cruz, supra,* at p. 6.) Whatever the wisdom of such a dichotomy, we conclude that the District cannot claim an exemption under section 53091 from the City's zoning regulations.

We turn to the qualified exemption granted local agencies by section 53096[6] for facilities "*related* to storage or transmission of water." (Italics added.) We must construe section 53096 in the context of the entire statutory scheme of which it is a part, in order to achieve harmony among the parts. (*People* v. *Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036]; *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 51 [276 Cal.Rptr. 114, 801 P.2d 357]; *In re Marriage of Colvin* (1992) 2 Cal.App.4th 1570, 1580 [4 Cal.Rptr.2d 323].) And we also abide by the maxim that "statutes should be interpreted in such a way as to make them consistent with each other, rather than obviate one another. [Citation.]" (*Nickelsberg* v. *Workers' Comp. Appeals Bd.*, *supra*, 54 Cal.3d at p. 298.)[7] A comparison of the two exemptions indicates that by adding section 53096 to the statutory scheme for the regulation of local agencies by cities and counties, the Legislature must have intended to afford different treatment to water districts from that given other local agencies. (Cf. *City of Santa Cruz, supra*, 210 Cal.App.3d at p. 6.) Section 53096 offers an exemption to water districts which is broader in reach than that found in section 53091, extending to all proposals *except* those involving facilities *not* related to storage or transmission of water.[8]

We think it reasonable to conclude that facilities "related to storage or transmission of water" within the meaning of section 53096 include only those which have a "connection with" and are in fact integral to the proper operation of particular storage and transmission functions of water districts. (Cf. *Retirement Fund Trust of Plumbing* v. *Franchise Tax* (9th Cir. 1990) 909 F.2d 1266, 1280; *Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co.* (1991) 53 Cal.3d 1041, 1048 [282 Cal.Rptr. 277, 811 P.2d 296]; *Barnick* v. *Longs Drug Stores, Inc.* (1988) 203 Cal.App.3d 377, 382 [250 Cal.Rptr. 10]; *O'Doan* v. *Insurance Co. of North America* (1966) 243 Cal.App.2d 71, 77-78 [52 Cal.Rptr. 184, 33 A.L.R.3d 684].) As we read

---

[6]The section 53096 exemption is qualified in that the local agency must elect to claim the exemption, and must do so upon a four-fifths votes of the members of the governing board at a noticed public hearing, and upon a determination by resolution "that there is no feasible alternative to its proposal." Procedures described in section 53096 must be followed. The agency's action is subject to reversal upon judicial scrutiny if found to be "arbitrary and capricious." (*City of Santa Cruz, supra*, 210 Cal.App.3d at p. 6.)

[7]Section 53096 was added to the statutory scheme in 1977 (Stats. 1977, ch. 435, § 2, p. 1468), and so we must presume that the Legislature was then aware of the existing laws and any judicial decisions having a direct bearing on them. (*Ibid.*; see also *People* v. *Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288]; *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].)

[8]To avoid unwarranted intrusion upon local land use decisions, the expanded section 53096 exemption imposes the prerequisite of a showing by the water district of no feasible alternative to the proposal.

section 53096, not all support facilities proposed by a water district will qualify for the statutory exemption. The statute seeks to clarify the definition by offering instructive examples of unrelated, nonexempt facilities: "warehouses, administrative buildings or automotive storage and repair buildings."[9] (Cf. *People* ex rel. *Cooper* v. *Rancho Santiago College, supra,* 226 Cal.App.3d at p. 1286; *City of Santa Cruz, supra,* 210 Cal.App.3d at pp. 7-8.) These listed ancillary structures are not directly connected to the unique function of water storage and transmission, and need not be located in close proximity to qualifying facilities. Thus can a proper balance be struck, we think, between local control of land use decisions and the interest of water districts in making critical support facilities which are directly related to water storage and transmission functions easily and promptly accessible. By acting pursuant to section 53096, water districts may override city and county zoning ordinances to the limited extent necessary to effectuate placement of affiliated facilities upon which storage and transmission of water depend, while local control is retained over unrelated facilities which may effectively function independently.

█ Upon review of the record, we find that the EASC project includes facilities which fall within the scope of the section 53096 exemption. The essential function of the proposed facility is to provide a base of operations for field services necessary for effective maintenance and repair of the District's water system in the East Area. The contemplated storage yards and buildings, which appear to us to comprise the largest component of the project, will contain equipment and materials vital to the continued functioning of the system: fuel, pipe and pipe fittings, sand, rock and gravel. The office building and parking areas are obviously necessary to field crews and other support personnel assigned to the EASC.[10] These proposed functions and facilities of the EASC project are an "integral and vital part" of the District's water system in the East Area. (Cf. *City of Santa Cruz, supra,* 210 Cal.App.3d at p. 9.) When viewed as a unified and singular project, the EASC is, we conclude, "related to storage or transmission of water" within the meaning of section 53096.

█ Nevertheless, the inclusion of several nonexempt components in the proposal compels us to declare that the EASC project is subject to the City's

[9]In this regard the trial court erred by finding that any facilities proposed by the District would necessarily be related to the storage or transmission of water under section 53096. The categories of nonexempt facilities listed in the statute are illustrative of those unrelated to water storage and transmission, not exceptions from the definition. (*Ibid.*)

[10]We observe that the "office/crew/warehouse building" does not, as we read the record, appear to be a nonexempt "administrative building," but rather consists of office spaces, labs, shops, and "crew support areas" related directly, we believe, to the function of water storage and transmission.

zoning and building constraints. The appurtenant "warehouse" and the "vehicle maintenance bay" facilities do not *directly* facilitate water transmission or storage functions and are expressly delineated as nonexempt by the statute. Thus, in its current form, the EASC project cannot be insulated from land use controls under section 53096. The language of the statute dictates the result. Where "the proposed use of the property . . . is for facilities not related to storage or transmission of water . . . including . . . warehouses . . . or automotive storage and repair buildings," the statutory exception is unavailable.

We are not persuaded to adopt the District's interpretation of the statute, under which an exemption would be granted to a project unless *all* included facilities were found nonexempt.[11] By so doing we would allow local agencies to obtain a section 53096 exemption for a project merely by including an exempt facility among others not related to storage or transmission of water, a result we are convinced the Legislature did not intend. The primary objective of the statutory scheme is to maintain local control of land use decisions (§ 53091), with carefully specified exceptions where necessary to further countervailing interests. (*City of Santa Cruz, supra,* 210 Cal.App.3d at p. 8.) To broaden the scope of section 53096 by extending an exemption to any project which includes an exempt facility would, we think, effectively emasculate the concept of local control. ■ " 'Exceptions to the general rule of a statute are to be strictly construed. In interpreting exceptions to the general statute courts include only those circumstances which are within the words and reason of the exception. . . . One seeking to be excluded from the sweep of the general statute must establish that the exception applies.' (*Barnes* v. *Chamberlain* (1983) 147 Cal.App.3d 762, 767 [195 Cal.Rptr. 417].)" (*Da Vinci Group* v. *San Francisco Residential Rent etc. Bd.* (1992) 5 Cal.App.4th 24, 28 [6 Cal.Rptr.2d 461].) ■ The District's proffered liberal interpretation of the section 53096 exemption comports with neither the statutory language nor the apparent intent of the Legislature.

We also reject a transcendent view of the statutory exemption, whereby a project with predominantly exempt facilities, such as the EASC project, would retain a section 53096 exemption even if consolidated with nonexempt components. Such an approach seems to us to lack sufficient clarity for effective implementation and exceeds the intended scope of the exemption.

We conclude that the section 53096 exemption is available to local agencies only if *all* or *substantially all* of proposed facilities of consequence

---

[11] The District asks us to read section 53096 "to prohibit a local agency such as the District from overriding municipal zoning only as to projects that consist *completely* of 'warehouses, administrative buildings, or automotive storage and repair buildings.' "

included in a project are related to storage or transmission of water. The EASC project has significant nonexempt components which may be eliminated from the proposal and located elsewhere without severely compromising the District's essential function of providing water to its customers.[12] Accordingly, the EASC project as proposed does not qualify for an exemption from the city's zoning and building regulations.

The judgment is affirmed. Costs on appeal are awarded to the City.

Strankman, P. J., and Stein, J., concurred.

---

[12]We might well find the EASC project entirely exempt from regulation by the City under section 53096 if the nonexempt components could be considered inconsequential or trivial additions to the otherwise qualifying facilities. As we read the record, however, the nonexempt facilities, while few in number, are a significant part of the EASC project.

We recognize that we have narrowly construed the section 53096 exemption, in accordance with interpretive guidelines. Nevertheless, our construction of the statutory scheme is, we think, compelled by the language used and the apparent intent of the Legislature, which, to be charitable, is not a model of clarity. It is for the Legislature, and not the courts, to relax the rigorous standards of the statutory exemptions.