TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  | : |  |
|---|---|---|
| OPINION | : | No. 99-206 |
|  | : |  |
| of | : | April 13, 1999 |
|  | : |  |
| BILL LOCKYER | : |  |
| Attorney General | : |  |
|  | : |  |
| GREGORY L. GONOT | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

WILLIAM R. McDANIEL has requested this office to grant leave to sue in quo warranto upon the following question:

Does the doctrine of incompatible public offices preclude a person from holding simultaneously the positions of planning commissioner of the City of Victorville and director of the Victor Valley Water District?

CONCLUSION

The holding simultaneously of the positions of planning commissioner of the City of Victorville and director of the Victor Valley Water District presents substantial questions of fact and law concerning the application of the incompatible public offices doctrine that warrants the granting of leave to sue in quo warranto.

PARTIES

WILLIAM R. McDANIEL ("relator") contends that LAWRENCE E. HUBER ("defendant") is unlawfully holding and exercising the office of director of the Victor Valley Water District ("District") as a result of his appointment to the office of planning commissioner for the City of Victorville ("City").

MATERIAL FACTS

The City is a general law city with jurisdictional boundaries substantially contiguous with those of the District. The District is a public corporation organized under the County Water District Law (Wat. Code, §§ 30000-33901).

On November 22, 1995, defendant was elected to a four-year term as a member of the board of directors of the District. On November 3, 1998, defendant was reappointed as a planning commissioner for the City.

ANALYSIS

In deciding whether to grant leave to sue in the name of the People of the State of California, we consider initially whether there exists a substantial question of fact or law that requires judicial resolution, and if so, whether the filing of an action in the nature of quo warranto would serve the overall public interest. (80 Ops.Cal.Atty.Gen. 242, 243 (1997).)

The relator's application for leave to sue concerns the common law prohibition against the holding of incompatible public offices. (See Civ. Code, § 22.2; *Matt* v. *Horstmann* (1950) 36 Cal.2d 388, 391-392; *People* ex rel. *Chapman* v. *Rapsey* (1940) 16 Cal.2d 636, 640-644; *Eldridge* v. *Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311, 319.) The prohibition prevents a person from holding simultaneously two public offices if the performance of the duties of either office could have an adverse effect upon the other. (68 Ops.Cal.Atty.Gen. 337, 338-339 (1985).) In 81 Ops.Cal.Atty.Gen. 304, 304-305 (1998), we quoted from our previous opinions in describing the prohibition as follows:

" 'Offices are incompatible, in the absence of statutes suggesting a contrary result, if there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power

over the other.'  [Citations.]

"  '  "The policy set forth in *People* ex rel. *Chapman* v. *Rapsey* [(1940) 16 Cal.2d 636] comprehends prospective as well as present clashes of duties and loyalties.  [Citation.]

"  '  "  'Neither is it pertinent to say that the conflict in duties may never arise; it is enough to say that it may, in the regular operation of the statutory plan.'  [Citation.]

"  '  "  'Only one significant clash of duties and loyalties is required to make offices incompatible . . . .'  [Citation.]  Furthermore, '[t]he existence of devices to avoid . . . [conflicts] neither changes the nature of the potential conflicts nor provides assurance that they would be employed . . . .'  [Citation.]  Accordingly, the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine.  A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible.  [Citation.]  Both positions, however, must be offices.  If one or both of the positions is a mere employment as opposed to a public office, the doctrine does not apply.  [Citation.]"  '  "

A county water district director holds a public office for purposes of the common law prohibition.  (73 Ops.Cal.Atty.Gen. 268, 270 (1990); 64 Ops.Cal.Atty.Gen. 288 (1981); 37 Ops.Cal.Atty.Gen. 21, 22, fn. 1 (1961); 32 Ops.Cal.Atty.Gen. 250, 252 (1958); see also 80 Ops.Cal.Atty.Gen., *supra*, at 244; 76 Ops.Cal.Atty.Gen. 81, 83 (1993); 75 Ops.Cal.Atty.Gen. 10, 13 (1992).)  We have also found that a city planning commissioner holds an office for purposes of the prohibition.  (66 Ops.Cal.Atty.Gen. 293, 295 (1983).)

Since both of defendant's positions are offices for purposes of the rule, we turn to whether the two offices are incompatible.  First, with respect to the office of city planning commissioner, we find that the City's planning commission consists of five regular members appointed by the mayor, with the approval of the city council.  Under the state planning and zoning law (Gov. Code, §§ 65000-66499.58),[1] the planning commission is responsible for the preparation and implementation of the City's general plan.  (§§ 65103, 65300, 65450.)  As required by section 65302, subdivision (d), a general plan must include:

"A conservation element for the conservation, development, and utilization of natural resources including water and its hydraulic force, forests,

---

[1] All references to the Government Code prior to footnote 2 are by section number only.

soils, rivers and other waters, harbors, fisheries, wildlife, minerals, and other natural resources. *That portion of the conservation element including waters shall be developed in coordination with any countywide water agency and with all district and city agencies which have developed, served, controlled or conserved water for any purpose for the county or city for which the plan is prepared.* Coordination shall include the discussion and evaluation of any water supply and demand information described in Section 65352.5, if that information has been submitted by the water agency to the city or county. The conservation element may also cover:

> "(1) The reclamation of land and waters.

> "(2) Prevention and control of the pollution of streams and other waters.

> "(3) Regulation of the use of land in stream channels and other areas required for the accomplishment of the conservation plan.

> "(4) Prevention, control, and correction of the erosion of soils, beaches, and shores.

> "(5) Protection of watersheds.

> "(6) The location, quantity and quality of the rock, sand and gravel resources.

> "(7) Flood control.

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

(Italics added.)

The planning commission is required to annually review the public works projects of local agencies for their consistency with the general plan. (§§ 65103, 65401.) Additionally, no local public works project may be approved within an area covered by a specific plan unless it is consistent with the adopted specific plan. (§ 65455.) The substantial nexus between the duties of a city planning commissioner and the allocation of water supplies is reflected in section 65352.5:

> "(a) The Legislature finds and declares that it is vital that there be close coordination and consultation between California's water supply agencies and

California's land use approval agencies to ensure that proper water supply planning occurs in order to accommodate projects that will result in increased demands on water supplies.

"(b) It is, therefore, the intent of the Legislature to provide a standardized process for determining the adequacy of existing and planned future water supplies to meet existing and planned future demands on these water supplies.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

We next consider the general responsibilities of a District director. A county water district is statutorily empowered to "do any act necessary to furnish sufficient water in the district for any present or future beneficial use." (Water Code, § 31020.)[2]  More specifically, section 31021 provides:

"A district may store water for the benefit of the district, conserve water for future use, and appropriate, acquire, and conserve water and water rights for any useful purpose."

Section 31022 states:

"A district may operate water rights, works, property, rights, and privileges useful or necessary to convey, supply, store, or make use of water for any purpose authorized by this division."

Section 31023 provides:

"A district may sell water or the use thereof for any useful purpose and whenever there is a surplus, dispose of the surplus to municipalities, public agencies, or consumers located without the district."

Section 31033 provides:

"A district may drain and reclaim lands within the district either by surface or underground works or both; and may acquire, by appropriation or other lawful means, and divert, store, conserve, transport or dispose of water resulting from such operations; and may acquire, by appropriation or other

_____

[2] All references hereafter to the Water Code are by section number only.

lawful means, and divert, store, conserve, transport or dispose of flood and storm water within the district, and flood and storm water of streams or watercourses outside of the district which flow into the district, for any beneficial purpose or use."

Given the foregoing statutory functions of a city planning commission and a county water district, it is evident that a person holding the offices in question would face a clash of duties and loyalties from time to time. For example, as a planning commissioner, defendant may rule upon subdivision applications that could place increased demands on water supplies. The City may be desirous of accommodating a given project, while the District may be seeking to avoid additional water usage that further residential development would necessitate. Clearly this would create a clash of loyalties for defendant as a City planning commissioner and District director.

A further clash of duties might arise from defendant's responsibility for the preparation of the water conservation element of the City's general plan and the making of determinations as to whether the public works projects of the District are consistent with the City's general and specific plans.[3] Here again, the exercise of defendant's judgment and discretion in promoting the best interests of the City in matters of water consumption and the best interests of the District as a provider of water might be compromised.

In 64 Ops.Cal.Atty.Gen. 288, *supra*, we examined a similar situation involving a county planning commissioner serving as a county water district director. After reviewing the duties of a county planning agency (which are the same as those of a city planning agency) and the powers and purposes of a county water district, we found that the respective duties "may come into conflict and result in clashes of loyalty." (*Id.*, at p. 291.) We pointed out that "what is best for the county in its planning activities may differ significantly from what is best for the county water district and the exercise of its independent powers." (*Ibid.*) The same is no less true with respect to defendant's dual office holding.

Although defendant has been a planning commissioner since 1982, he was last reappointed on November 3, 1998. Hence, it would be his office as District director that

---

[3] We note that building ordinances and zoning ordinances of a city or county do not apply to the location or construction of "facilities for the production, generation, storage, or transmission of water" (Gov. Code, § 53091) and a qualified exemption is provided for facilities "related to storage or transmission of water" (Gov. Code, § 53096). These statutory provisions, however, have been narrowly construed. (See *City of Lafayette* v. *East Bay Mun. Utility Dist.* (1993) 16 Cal.App.4th 1005, 1013-1018.) Thus, a clash of duties and loyalties for defendant may arise from the application of the City's building and zoning ordinances to District projects, as well as from the requirement that District projects be consistent with the City's general and specific plans.

would be forfeited by application of the incompatible offices doctrine. (See 41 Ops.Cal.Atty.Gen. 98, 99 (1963).)


PUBLIC INTEREST


As a general rule, we have viewed the existence of a substantial question of fact or law as presenting a sufficient "public purpose" to warrant the granting of leave to sue. (81 Ops.Cal.Atty.Gen., *supra*, at 309.) Accordingly, leave will be denied only in the presence of other overriding considerations. (*Ibid*.; 81 Ops.Cal.Atty.Gen. 94, 98 (1998).) We have found no countervailing considerations herein. Although the remaining portion of defendant's term of office as a director of the District is less than a year, the inhabitants of the City and of the District have a paramount interest in fostering undivided loyalties in their public officers.

Accordingly, the application for leave to sue in quo warranto is GRANTED.


\* \* \* \* \*